**STATE of Iowa, Appellee,**

**v.**

**Margaret Jane HANCOCK, Appellant.**

**No. 53218.**

Supreme Court of Iowa.

Jan. 14, 1969.

P. F. Elgin, Indianola, for appellant.

Richard C. Turner, Atty. Gen., James C. Sell, Asst. Atty. Gen., and Darrell Goodhue, County Atty., for appellee.

MOORE, Justice.

On April 5, 1968 a county attorney's information was filed in Warren County District Court charging defendant, Margaret Jane Hancock, with the crime of forgery in violation of section 718.1, Code, 1966. On May 14, the first day of trial and after the jury had been sworn, the trial court permitted amendments to the information to a charge of uttering a forged instrument in violation of Code section 718.2. The jury returned a verdict of guilty of uttering a forged instrument and defendant has appealed from the judgment and sentence thereon. We reverse.

Attached to the information were the minutes, in summary form, of testimony of four witnesses. Gale Vinson, cashier for

the Hy-Vee Food Store at Indianola, was to testify that on January 30, 1968 he cashed a check for defendant drawn on the Peoples Trust and Savings Bank in the sum of $140 being the instrument referred to in the information. Banker T. J. Nicholls was to testify the purported makers of the check were unknown and had no account at the bank. Sheriff Mathews was to testify defendant denied any knowledge of the check and that she voluntarily gave him a sample of her handwriting which he turned over to Duane L. Barton, Questioned Document Examiner of the Iowa Bureau of Criminal Investigation. Barton was to testify that in his opinion the author of the handwriting sample and of the check involved was the same person. Later the county attorney gave notice Robert Voss would testify he gave defendant, at her request, a polygraph or lie detector test and that it showed an intent to deceive as to relevant questions concerning the writing and negotiation of the check involved. He was to testify after the test defendant admitted writing and cashing the check involved.

Defendant was an indigent and her present attorney has at all times represented her by court appointment.

On April 18 defendant filed an application which referred to the pending forgery charge, her denial of any knowledge of the check, Barton's adverse opinion as to her handwriting and therein requested the trial court to authorize payment of funds by Warren County to obtain an independent analysis of her handwriting for comparison purposes and also for allowance of witness fees for a handwriting expert. The record discloses only the court's order of April 23 denying the application. Apparently no hearing was had on defendant's application.

I. The first issue presented on this appeal is whether the trial court erred in denying this indigent defendant's pretrial request for such funds. Later at the trial Barton conceded handwriting experts' opinions are sometimes at variance.

As each of defendant's requests must be considered in the light of different statutes we first consider her request for an independent analysis of her handwriting and that appearing on the check involved.

Code section 775.5, as enacted in 1965 by chapter 449 of the Sixty-first General Assembly, as material here, provides: "An attorney appointed by the court to defend any person charged with a crime in this state shall be entitled to a reasonable compensation to be decided in each case by the court, including such sum or sums as the court may determine are necessary for investigation in the interests of justice. * * *."

This section lodges limited discretionary power in the trial court to disburse reasonable compensation to an attorney defending an indigent for the purpose of conducting an investigation in the interests of justice.

In Schmidt v. Uhlenhopp, 258 Iowa 771, 775, 140 N.W.2d 118, 121, and Weaver v. Herrick, 258 Iowa 796, 803, 140 N.W.2d 178, 182, we say section 775.5 contemplates an attorney should not be expected to defend an accused gratuitiously. To which we now add it also recognizes a court appointed attorney should not be required to incur personal expenses in preparing and conducting a meaningful and conscientious defense for the accused.

The statute clearly protects against frivolous, unwarranted claims by restricting payment to those investigations which in the court's judgment are necessary in the interests of justice.

In ruling on defendant's motion for a new trial the court said: "The Court believes it had discretion and in this particular case had the duty to deny defendant's application for an expert witness to examine the handwriting specimens and the questioned document for the defendant."

This ruling was based essentially on the court's finding the success of the State's

case had not been entirely dependent on the results of its handwriting analysis and also the feeling defendant should have at least alleged the unreliability of the State's handwriting expert.

Initially we note it would be extremely difficult, if not impossible in most cases, for a party unschooled in the subject of handwriting expertise to effectively challenge the reliability of an expert without the aid of his own expert.

Additionally we are convinced the refusal to provide funds for an independent analysis of defendant's handwriting was not in the best interests of justice, particularly in view of the fact the State had given notice it intended to call an expert who would testify as to the similarity of defendant's exemplar with the writing which appeared on the check.

At the time defendant's application was filed she stood accused of forgery and the issue of authorship was crucial. Notwithstanding the information was later amended to charge uttering a forged instrument the issue was yet all important. The State's expert opined defendant had authored the check even though she denied any knowledge of the matter on the witness stand.

An independent analysis of defendant's handwriting conducted by an expert of her own choosing could well have resulted in a conclusion diametrically opposed to that reached by Barton. In denying her request the court effectively prevented defendant from even the possibility of obtaining evidence which may have been highly relevant and material to a meaningful defense. Such an opportunity could not have been denied a defendant of means. Defendant's indigency should not be permitted to stand as a barrier to such vital evidence.

Accordingly, we hold under the facts of this case section 775.5 fairly contemplates payment for the purpose of obtaining an independent analysis of defendant's handwriting. The trial court committed re-

versible error in denying defendant's application.

Before considering defendant's next assignment of error we note we are not unaware the denial of defendant's request for a handwriting analysis has overtones sounding in due process and equal protection of the laws. Defendant has chosen not to argue either of these theories and for the present we prefer to base our opinion on section 775.5. However for discussions along these lines see People v. Watson, 36 Ill.2d 228, 221 N.E.2d 645, which is a case closely similar to the case at bar and note also, 32 Mo.L.Rev. 543, 1967. But see State v. Superior Court In and For County of Pima, 2 Ariz.App. 458, 409 P.2d 742.

II. Defendant's pre-trial request for allowance of witness fees for a handwriting expert whom she would wish to call at trial was premature and properly denied. Defendant had not determined she would call an expert at trial. Before the independent handwriting analysis she could not have known the results would aid her defense. However, under proper circumstances defendant would be permitted to call such an expert under the authority of Code section 781.2.

III. Defendant asserts the trial court erred in overruling her motion to suppress the evidence of Robert Voss regarding a claimed oral confession made by defendant while he was administering a polygraph examination in his capacity as an agent of the Iowa Bureau of Criminal Investigation. She argues the statements and conduct of Voss coupled with the absence of counsel effectively denied her freedom of choice and constituted fundamental unfairness in violation of her constitutional rights. We cannot agree.

The record reveals defendant's decision to take the test was prompted by her desire to convince the authorities of her innocence.

On May 8 defendant, her attorney and the county attorney entered into a written

stipulation providing in part, "the results of the lie detector or polygraph test will be admissible to evidence by either party to this action" and that "the parties hereto waive any objections, privileges, or other rights of exclusion that they might have as to the results of the aforesaid test." They also stipulated they were aware the results of polygraph examinations were ordinarily inadmissible in the absence of stipulation and that defendant had consulted her attorney before agreeing to take the examination.

The examination was administered in a sound proof room at the State Office Building in Des Moines. Defendant and Voss were the only persons present. Voss briefly explained how the machine operated and pre-read the questions he would ask during the actual test. He also read her the Miranda warnings from a form sheet and asked if she would sign a waiver of her constitutional rights. She signed the waiver. Voss testified all his questions were formulated for the purpose of determining whether defendant had written or cashed the check involved. Actual testing time consumed twenty-two minutes.

Following the first series of questions Voss told defendant he believed her answers denying knowledge of the check were false. He then left the room for about ten minutes telling her to "think it over" in his absence. The evidence conflicts as to what occurred when Voss returned to the room.

Voss stated defendant professed concern for the welfare of her young children and that she thereafter voluntarily admitted writing and cashing the check.

Defendant on the hearing to suppress the evidence of Voss and on trial testified she had made such admissions but they were not true. She stated Voss reminded her she had no previous criminal record, emphasized the personal embarrassment attendant upon a jury trial and stressed the adverse effect a prison sentence would have on the welfare of her children. He also told her she should confess because if she maintained her innocence and was found guilty it would go harder on her and she would probably go to jail, but if she confessed she probably would not be confined.

In accordance with the procedure set out in State v. Holland, 258 Iowa 206, 214, 215, 138 N.W.2d 86, 90, 91, the trial court held an evidentiary hearing in the jury's absence to determine the voluntariness of the alleged confession. The court considered all the relevant testimony, filed findings of fact and conclusions of law and ruled defendant's statements were voluntary.

The testimony of Voss and defendant was again taken before the jury concerning the voluntariness of defendant's statements. This was proper, not to allow the jury to pass on the question of admissibility but to determine the weight and credit to be given this part of the State's case. The court's instructions pointed out the jury's duty in this regard.

Defendant quite obviously envisioned the examination results would work to her advantage and was naturally disappointed when they did not. She was aware the test questions would be centered around her knowledge of the bad check and had stipulated to the admissibility of the results. On cross-examination she was asked the questions, "Were you surprised at any of the questions he asked you? Did Mr. Voss in any way threaten you? Were you afraid of Mr. Voss? Did you ever ask him to leave or say that you wanted to discontinue the test?" She answered negatively to all these questions.

The trial court's finding that defendant was not subjected to threats, duress or promises of leniency is supported by the evidence. The weight to be given defendant's statements admittedly made to Voss was properly submitted to the jury. We find no error under this assignment.

IV. Defendant asserts "the court erred in allowing the prosecution to amend the information after the trial had

an offense separate and distinct from the original charge." We agree the trial court commenced and which amendment charged committed reversible error in this respect.

The original information filed against defendant read as follows: "In the District Court of Warren County.

"THE STATE OF IOWA
     vs.     }  Information
MARGARET JANE HANCOCK

"Comes now Darrell Goodhue as County Attorney of Warren County, State of Iowa, and in the name and by the authority of the State of Iowa, accuses Margaret Jane Hancock of the crime of forgery committed as follows:

"The said Margaret Jane Hancock on or about the 30th day of January A.D. 1968, in the County of Warren and State of Iowa, did falsely, feloniously and with intent to defraud, make, draw, deliver, utter or give to Galen Vinson, an employee at the Hy-Vee Food Store, Indianola, Iowa, a certain writing on paper purporting to be a check on the Peoples Trust and Savings Bank, Indianola, Iowa, the tenor whereof being as follows, to wit:

"No.

"    1–30    1968

"Dollars

"Pay to the order of     Don Doncon    140.00

One hundred and forty     Dollars    00 cts.
    Trust &
PEOPLES Savings Bank
    Indianola, Iowa
Offices at: Milo, Iowa—Lacona, Iowa

"Mr & Mrs Richard Harts

"Reverse side of check:

    (Stamp)
  "Mrs. Richard Harts    Pay to the order of
  605 E. 1st    PEOPLES TRUST & SAVINGS BANK
  Indianola, Iowa    Indianola, Iowa

    For deposit only
    By Hy Vee Food Stores, Inc.
    d/b/a Hy-Vee Food Store
    Indianola, Iowa
        HY–VEE

contrary to the provisions of Section 718.1 of the 1966 Code of Iowa and against the peace and dignity of the State of Iowa.

            Darrell Goodhue
      DARRELL GOODHUE, Warren County Attorney"

Although not material to any of the issues raised on this appeal it is interesting to note the check purports to be endorsed by one of the makers and not by the payee. A little care by the cashier might well have avoided this controversy and the loss to his employer.

After the jury had been selected and sworn defendant, out of the presence of the jury, made a motion to quash the information on the ground it was duplicitous in that it charged both forgery and uttering a forged instrument which are different crimes. The motion was grounded on Code section 773.36, which requires an indictment to charge but one offense. County attorney's informations are considered like indictments and therefore must be so limited. Code section 769.13.

The trial court overruled defendant's motion. This was proper. It is clear the information charged "forgery * * * contrary to the provisions of Section 718.1 of the 1966 Code of Iowa." This is clearly a charge in the name of the crime and under the applicable code section as authorized by section 773.4. See also State v. Craig, 252 Iowa 290, 292, 106 N.W. 2d 653, 654.

Following the court's ruling the county attorney was permitted to amend or change the information by striking the words "make" and "draw". Defendant's attorney specifically asked if that was the extent of the change. He was so assured by the county attorney and the trial court.

Trial before the jury was then resumed. In reading the information to the jury the county attorney for the first time mentioned a charge of uttering a forged instrument. He did so when he read the information to the jury as follows: "Comes now Darrell Goodhue as County Attorney of Warren County, State of Iowa, and in the name and by the authority of the State of Iowa, accuses Margaret Jane Hancock of the crime of forgery committed—of the crime of uttering a forged instrument as follows * * *." The remainder of the

information was read exactly as set out, supra, including the numbered designation 718.1. Section 718.1 defines and sets out the penalty for forgery. Defendant's opening statement was then made.

The jury was again excused for a short recess and the county attorney obtained the court's permission to strike the word "forgery" and insert in lieu thereof the words "uttering a forged instrument". Section 718.2, which defines and fixes the penalty for uttering a forged instrument, was inserted in lieu of 718.1. Defendant resisted the amendments and again moved to quash the information, this time on the ground it charged a separate and distinct crime from that originally charged. The motion was overruled and trial was resumed. Defendant's counsel stated no waiver of defendant's rights was to be inferred by participation in the further proceedings. He renewed his objections subsequently and restated them in defendant's motion for a new trial.

The newly amended information was not read to the jurors. They were not advised defendant was charged with uttering a forged instrument contrary to section 718.2 until the court read the instructions at the conclusion of closing arguments.

Code section 773.43 provides: "Amendment. The court may, on motion of the state, and before or during the trial, order the indictment so amended as to correct errors or omissions in matters of form or substance."

Code section 773.46 provides: Nonpermissible amendment. Such amendment shall not be ordered when it will have the effect of charging the accused with an offense which is different than the offense which was intended to be charged in the indictment as returned by the grand jury."

We have said many times that "forgery" and "uttering a forged instrument" are separate and distinct crimes. State v. Blodgett, 143 Iowa 578, 585, 121 N.W.

685, 688; State v. Solberg, 214 Iowa 333, 335, 242 N.W. 84, 85; State v. Meeks, 245 Iowa 1231, 1237, 65 N.W.2d 76, 79; State v. Craig, 252 Iowa 290, 293, 106 N.W. 2d 653, 654.

It is reversible error under 773.46 to amend an indictment after trial has begun to charge an offense different than the offense which was intended to be charged in the indictment as returned by the grand jury. State v. Herbert, 210 Iowa 730, 231 N.W. 318. See also Anno. 17 A.L.R.3d 1181, section 15.

Code section 769.13 makes the statutes applicable to indictments likewise applicable to county attorney's informations "as nearly as may be".

Under the record we conclude the clear meaning of section 773.46 was violated. Defendant was entitled to have the information as finally changed from forgery to uttering a forged instrument quashed and dismissed.

 V. Finally, defendant urges the court erred in submitting the so called alibi instruction. In view of the fact this cause must be reversed on the grounds already stated we need not consider this contention in detail. We have already held the information as amended should have been quashed. It is sufficient to note we have suggested trial courts omit from the alibi instruction that part which puts the burden on defendant to prove an alibi. See State v. Carter, Iowa, 161 N.W. 2d 722, 727.

For the reasons stated the judgment and sentence of the trial court is reversed. This cause is remanded with instructions to the trial court to dismiss the information as amended.—

Reversed and remanded.

GARFIELD, C. J., and LARSON and SNELL, JJ., concur.

All other justices concur in a reversal and in the opinion except for Division III, to which BECKER, STUART, MASON, RAWLINGS and LeGRAND, JJ., dissent.

BECKER, Justice (dissenting).

I concur in the result.

As to Division III I would hold the State overreached in offering testimony elicited after the polygraph test was complete. The Miranda waiver (as distinguished from the stipulation) was not proper because taken absent defendant's attorney, without his permission under a limited stipulation for a specific purpose and can not rationally be considered part of the test. Therefore, what happened after the test was inadmissible.

STUART, MASON, RAWLINGS, and LeGRAND, JJ., join in this dissent.