**UNITED STATES of America**

v.

**Walter J. CHAVIS, Jr., Appellant.**

**No. 72–1532.**

United States Court of Appeals,
District of Columbia Circuit.

Argued March 7, 1973.

Decided April 4, 1973.

Robert H. Turtle, Washington, D. C. (appointed by this Court) for appellant. Richard C. Johnson, Washington, D. C. (also appointed by this Court), was on the brief for appellant.

Richard L. Beizer, Asst. U. S. Atty., with whom Harold H. Titus, Jr., U. S. Atty., John A. Terry, and Robert J. Higgins, Asst. U. S. Attys., were on the brief for appellee.

Before McGOWAN, TAMM and WILKEY, Circuit Judges.

WILKEY, Circuit Judge:

Appellant was charged with four counts of assault with intent to commit armed robbery and related offenses.[1] There is little doubt on the facts, and appellant did not contest at trial and does not contest here that he committed the acts with which he is charged. His sole defense was that he was legally insane at the time of the offense. His appeal is based on the allegation that he did not receive adequate psychiatric assistance to prepare this defense. Due to the absence in the record of certain critical information, we cannot determine at this time whether appellant was improperly denied psychiatric assistance. We therefore remand the case to the trial court to develop evidence and permit explanation of certain points presently obscured.

## I.  *Evidence and Trial Court Action*

Appellant has a history of psychological instability. In 1969 a military doctor recommended that he be released from the Army in part because of an observed propensity toward psychiatric illness. In 1970, after undergoing an operation, appellant was confined to the psychiatric ward of a Veterans Administration hospital because of violent, irrational outbursts. He was diagnosed as having an "anti-social personality" and being a "borderline schizophrenic." On one occasion following his discharge from the VA hospital police had to be called to subdue appellant who was acting in an irrational manner. He was immediately taken to the psychiatric ward of the D. C. General Hospital where he spent 16 days; appellant's admission was based upon a conclusion that he was "mentally ill." Following his discharge appellant allegedly experimented with various drugs, including LSD. On 5 January 1971, four months after being released from the psychiatric ward of D. C. General, appellant committed the acts which led to his arrest.

In April 1971 appellant's counsel moved to have appellant examined pursuant to 24 D.C.Code § 301 to determine his competency to stand trial and his mental condition as of the date of the charged offenses. The motion was granted and appellant spent 15 days being examined in St. Elizabeths, a Government-operated psychiatric hospital. The St. Elizabeths report stated that appellant was competent to stand trial and was not suffering from a mental disease or defect on the date of the offense. In November 1971 appellant's attorney moved for a second examination in order to verify the initial findings of the first court-ordered examination, and to permit the defense to determine if grounds existed to assert a defense of insanity. The motion was granted and appellant was referred to Legal Psychiatric Services, an agency of the Government. Ap-

---

1. Walter J. Chavis, Jr., was indicted in the United States District Court for the District of Columbia on 6 April 1971, on four counts of (1) assault with intent to commit robbery while armed (22 D.C. Code §§ 501 & 3202) ; (2) assault with intent to commit robbery (22 D.C.Code § 501) ; (3) assault with a dangerous weapon (22 D.C.Code § 502) ; and (4) carrying a dangerous weapon (22 D.C.. Code 3204).

pellant was examined for about 50 minutes by Dr. Maguigad of LPS, who reported that, while appellant was presently competent to stand trial, he had been "suffering from Schizophrenia Undifferentiated Type which substantially imparied [sic] his behavior at the time of alleged offense. . . ."

Following this report appellant's attorney wrote a letter *ex parte* to the trial judge, moving to have Maguigad appointed to serve as a defense witness under the provisions of 18 U.S.C. § 3006A, which provides for the allocation of money to pay for expert witnesses for indigent defendants.[2] This request apparently was made because defense counsel felt that additional examinations by Dr. Maguigad would be necessary for him to serve as an effective witness, and that consultation between the doctor and defense counsel would be necessary in order to prepare an effective presentation to the jury.

The trial judge took no action on the motion until a March 1972 calendar call, at which time appellant's attorney in open court and before the prosecutor inquired as to the disposition of his request. Upon hearing that appellant had requested expert assistance, the prosecutor vigorously opposed the motion as being unnecessary and a waste of money

in light of the psychiatric examinations already undertaken. The court ruled that Dr. Maguigad could not be appointed under § 3006A, ostensibly because there might be an apparent conflict of interest between his role as a court-appointed independent expert and his acting as a defense witness under § 3006A. Appellant immediately applied alternatively for another expert to be appointed; the Government opposed this as well. The court declined to appoint another doctor, saying:

> We are not going to continually appoint more and more psychiatrists. This is it. He has been examined by two psychiatrists . . . . Your motion is denied.[3]

The stated basis for appellant's desire to receive more examinations from either Dr. Maguigad or another doctor was that counsel believed that Dr. Maguigad's 50-minute examination would have little weight in the jury's mind when countered by the 15 days of examinations conducted by St. Elizabeths, the results of which supported the Government's position.[4]

Indeed, appellant's fears were borne out at trial. The Government seriously impeached Dr. Maguigad, both on his qualifications as an expert and his familiarity with the case.[5] At the conclu-

---

2. Services other than counsel.—Counsel for a defendant who is financially unable to obtain investigative, expert, or other services necessary to an adequate defense in his case may request them in an ex parte application. Upon finding, after appropriate inquiry in an ex parte proceeding, that the services are necessary and that the defendant is financially unable to obtain them, the court shall authorize counsel to obtain the services on behalf of the defendant. The court may, in the interests of justice, and upon a finding that timely procurement of necessary services could not await prior authorization, ratify such services after they have been obtained.

18 U.S.C. § 3006A(e) (1970).

3. Tr. at 7.

4. Defendant's trial counsel at the hearing on 20 March 1972 was no doubt well

aware of our decision of 3 June 1971 in United States v. Schappel, 144 U.S.App. D.C. 240, 445 F.2d 716, in which we had upheld a trial court's determination from conflicting psychiatric testimony that the defendant was not mentally incompetent at the time of the robbery, on precisely the same ground feared by defense counsel here, *i. e.*, that the examination at St. Elizabeths by the experts holding the accused competent was much more thorough and over a longer period of time than that afforded the defense experts, whose opinion was that the accused was incompetent. Further, the Government prosecutor in *Chavis* was the same counsel who had prevailed as Government appellee's counsel in *Schappel* on this argument.

5. Appellant argues that having argued against permitting an appointment under § 3006A on the grounds that the previous

sion of the cross-examination of Dr. Maguigad, appellant's attorney moved for a mistrial on the ground that appellant had been unlawfully denied psychiatric assistance sufficient to prepare an adequate defense. The trial court denied the motion. The jury subsequently found appellant guilty on all counts and appellant was sentenced to a jail term.

## II. Failure to Appoint Under Section 3006A

### A. The Statutory Scheme

■ 18 U.S.C. § 3006A is designed to provide indigent defendants in criminal cases with representation and expert service. It is clear that the Act comprehends within its definition of "expert services" the assistance of a psychiatric expert in preparing and presenting an insanity defense.[6] The test to be ap-

plied in determining whether the court should provide such service consists of two factors: whether the defendant is financially unable to obtain the required service himself, and whether the service is *necessary* to the preparation and presentation of an adequate defense.[7] A defendant's indigency and need for assistance under § 3006A is to be determined by an *ex parte* proceeding. There is no dispute in this case that appellant is financially unable to obtain the required service himself. The case turns on whether or not the service requested is necessary to an adequate defense.

■■ The purpose and nature of a § 3006A appointment is entirely different from an examination conducted by an order of the court. The latter is conducted to serve the court in a completely nonpartisan manner.[8] While the opin-

examination was adequate, and that Dr. Maguigad was highly qualified, at trial the Government should not be permitted to impeach Dr. Maguigad, particularly in regard to his professional qualifications. This is one of several issues with which we shall deal after receiving the additional evidence developed by the trial court on remand.

6. This proposition is true in all Circuits that have ruled on the subject and we do not understand the Government to contradict this. United States v. Theriault, 440 F.2d 713, 715–716 (5th Cir. 1971); United States v. Taylor, 437 F.2d 371, 377 (4th Cir. 1971); United States v. Schultz, 431 F.2d 907, 911–912 (8th Cir. 1970).

7. The statute is as follows:
Upon finding, after appropriate inquiry in an *ex parte proceeding*, that the *services are necessary* and that the defendant is *financially unable to obtain them*, the court shall authorize counsel to obtain the services on behalf of the defendant.
18 U.S.C. § 3006A(e) (1970) (emphasis added).

8. The text of the statute under which appellant was referred to St. Elizabeths and later to PLS makes it clear that its provisions are designed to aid the court:
If it appears to a court having jurisdiction of—
(1) a person arrested or indicted for, or charged by information with, an offense, or

(2) a child subject to a transfer motion in the Family Division of the Superior Court of the District of Columbia pursuant to section 16–2307, that, from the court's own observations or from prima facie evidence submitted to it and prior to the imposition of sentence, the expiration of any period of probation, or the hearing on the transfer motion, as the case may be, such person or child (hereafter in this subsection and subsection (b) referred to as the "accused") is of unsound mind or is mentally incompetent so as to be unable to understand the proceedings against him or properly to assist in his own defense, the court may order the accused committed to the District of Columbia General Hospital or other mental hospital designated by the court, for such reasonable period as the court may determine for examination and observation and for care and treatment if such is necessary by the psychiatric staff of said hospital. If, after such examination and observation, the superintendent of the hospital, in the case of a mental hospital, or the chief psychiatrist of the District of Columbia General Hospital, in the case of District of Columbia General Hospital, shall report that in his opinion the accused is of unsound mind or mentally incompetent, such report shall be sufficient to authorize the court to commit by order the accused to a hospital for the mentally ill unless the accused or the Government objects, in which event,

ions of such an expert may assist one side or the other in a case, this is not the primary purpose for the expert's appointment. The expert appointed under § 3006A, however, is not originally and primarily an aide to the court, but rather is intended to serve the interests of the defendant. The Fifth Circuit has noted this distinction in analyzing the effect of examinations conducted under provisions analogous to the statute under which defendant was referred to St. Elizabeths and sent to PLS:

> Sec. 4244 concerns examination to determine if the defendant is competent to stand trial. The court appoints a psychiatrist who examines the accused and reports to the court. Rule 28 authorizes the court to appoint its own expert witness, who is expected to be neutral and detached. He advises the parties of his findings. *See* Rule 28 and Wright, Federal Practice and Procedure, § 452. The § 3006A(e) expert fills a different role. He supplies expert services "necessary to an adequate defense," which embraces pretrial and trial assistance to the defense as well as availability to testify. His conclusions need not be reported to either the court or the prosecution.[9]

It has been established in this Circuit that under some circumstances § 3006A commands that psychiatric examinations be ordered and that the statute envisions that experts will aid in the preparation for trial as well as testify at the trial itself.[10] Heretofore it has not been necessary to delineate the precise parameters of the requirements and the trial court's discretion in making such appointments.

It is clear that court-ordered psychiatric examinations such as the first two conducted in this case are not necessarily sufficient so that no examinations need be provided under § 3006A. The Eighth Circuit, for example, in United States v. Schultz,[11] held that the trial judge had abused his discretion in refusing to order the appointment of a § 3006A expert. In that case the defendant had a history of psychopathic behavior. Likewise in *Schultz* the defendant was committed for observation in a Government hospital to determine his competency to stand trial. This report indicated that defendant was competent but that defendant suffered from some form of psychological disturbance. After noting that this was apparently a case of first impression, the court held that it was error under these circumstances for the trial court to deny defendant's request under § 3006A for psychiatric assistance in preparing its case.

■ ■ It cannot be true, however, that a defendant always has a right to a psychiatrist under § 3006A. Under some circumstances the court would have the responsibility to prevent abuses from defendants asking for multiple examinations. Thus the Fifth Circuit has noted that "[t]he functions of the two

---

the court, after hearing without a jury, shall make a judicial determination of the competency of the accused to stand trial or to participate in transfer proceedings. If the court shall find the accused to be then of unsound mind or mentally incompetent to stand trial or to participate in transfer proceedings, the court shall order the accused confined to a hospital for the mentally ill.

24 D.C.Code § 301(a) (Supp. V, 1972).

9. Godbold, Circuit Judge, in United States v. Theriault, 440 F.2d 713, at 715 (5th Cir. 1971). In *Theriault* the defendant had been examined by a psychiatrist on the authority of 28 Fed.R.Crim.P. and

18 U.S.C. § 4244 (1970). Appellant here was examined under the provisions of 24 D.C.Code § 301(a) (Supp. V, 1972) because the provisions of that statute in this context displace the statute and rule involved in the Fifth Circuit case. *See* 24 D.C.Code § 301(h) (Supp. V, 1972). The D.C. provision and the generally applicable federal scheme are sufficiently similar, however, so that in this context the Fifth Circuit's rationale is applicable to our case.

10. United States v. Schappel, 144 U.S.App. D.C. 240, 243 n. 7, 445 F.2d 716, 719 n. 7 (1971).

11. 431 F.2d 907 (8th Cir. 1970).

[types of] appointments are different, but the court has a responsibility to prevent abuse of the availability of appointive processes." [12]

The answer to this question of when psychiatric assistance is "necessary" depends upon two variables. First, a judge should consider the likelihood that an insanity defense is warranted. Obviously a court should not be required to appoint a psychiatrist if there is absolutely no reason to think that such a plea would be successful. A trial judge's evaluation of this factor could, among other things, be based upon a prior medical history of psychological imbalance, testimony by those acquainted with the defendant regarding his actions and apparent mental state, or the judge's own evaluation of the defendant's demeanor. Second, the judge should consider whether the defendant has received sufficient psychiatric assistance from other sources; an adequate defense under some circumstances could be prepared based on the findings, assistance and testimony of a court-appointed psychiatrist. The issue does not revolve around the technical fact of under what provision a psychiatrist is appointed, but rather the substantive issue of whether the defendant received the assistance "necessary to an adequate defense." Such assistance could come from the testimony and aid of court-appointed psychiatrists, independent charitable institutions, or even a concerned independent psychiatrist who is donating his time to the ends of justice. These and other sources of psychiatric assistance might, under some circumstances, provide a defendant with the expert assistance needed to prepare "an adequate defense" and thereby render an appointment under § 3006A "unnecessary."

■ The record before us in this case provides ample information regarding the likelihood that an insanity defense might be warranted. A fairly complete description of appellant's psychiatric history was presented at trial and was the subject of substantial enlightening debate by the attorneys. This court is, therefore, able to evaluate this element of "need" in reviewing the trial court's refusal to appoint a psychiatrist under § 3006A.

There is, however, relatively much heat but little light in the record regarding the second element to be considered —whether appellant actually received expert assistance sufficient for the preparation of an adequate defense. We know from the record that Dr. Maguigad did testify at trial on behalf of defendant. This standing alone does not necessarily mean that defendant received the psychiatric assistance necessary to an adequate defense. As every trial lawyer knows, there is much more to presenting a defense than simply presenting testimony. Some testimony is more convincingly presented than other, and no lawyer would rely on a witness to simply "tell his story." Particularly with expert witnesses, ample pretrial study by the expert and consultation between lawyer and witness are usually invaluable. The record also reflects that defendant's lawyer strenuously protested that Dr. Maguigad had been either unwilling or unable to examine defendant aside from the initial 50-minute interview, to spend time familiarizing himself with defendant's medical history, or to consult with defendant's lawyer regarding the substance of what would be testified to at trial. On the state of the record before us we do not know if these allegations are true or, if true, whether they affected the quality of the defense to such an extent that it must be described as "inadequate." In order to illuminate the situation we remand the case for further proceedings to develop facts through adversary proceedings on certain elements of the case.

**B. Areas of Inquiry**

To assist the trial judge and attorneys in this inquiry we outline the areas and issues which are necessary to be ex-

12. United States v. Theriault, *supra*, 440 F.2d at 715 n. 3.

plored. It is not our intention to limit inquiry to these matters; the proceeding should inquire into any and all matters that would be relevant to determining the obscured issues in this case.

1. With regard to Dr. Maguigad:

(a) *His relations with appellant.*— Did he have further consultations with appellant prior to trial? If so, what was the nature of these consultations? If not, why did he not have further consultations? Was Dr. Maguigad asked by appellant's attorney to examine appellant further? Did Dr. Maguigad ever state that further examinations would be necessary or desirable in rendering his expert judgment at trial? Does he now so believe? If appellant could have paid for additional examinations, would he have examined the appellant further?

(b) *His relationship with appellant's attorney.*—Did Dr. Maguigad consult with appellant's lawyer in the preparation of appellant's defense? If so, what were the time, nature, and extent of those consultations? If not, why not? Did appellant's lawyer request that Dr. Maguigad consult with him prior to trial? If appellant could have have paid for Dr. Maguigad's consultation prior to trial, under those circumstances would he have consulted with appellant's lawyer?

(c) *Nature of Dr. Maguigad's relationship with LPS.*—Does Dr. Maguigad work for LPS full-time or does he have a separate practice? If Dr. Maguigad had examined appellant further or consulted with appellant's lawyer, would he have been paid by LPS for his services? Would LPS have received the compensation? If he did not examine or consult, was it because of any policy on the part of LPS that forbids more than one examination of a patient referred by a court? If Dr. Maguigad

had examined appellant again, would it have been in his capacity as an employee of LPS or as a private practitioner?

2. With regard to what efforts appellant's trial counsel made to obtain further consultation and assistance from Dr. Maguigad: Did he ask that Dr. Maguigad consult with him regarding the preparation of the case? If so, what was Dr. Maguigad's response? Did appellant's counsel have any contact with any other employee of LPS on this matter? If so, what was the nature and extent of this contact?

3. There are some matters that can best be elucidated by the head or another officer authorized to speak for Legal Psychiatric Services. Does LPS have a policy regarding the extent of time its doctors may spend with a patient referred by court? Does LPS have a policy that prohibits its doctors from taking as outside patients anyone first examined by that doctor as a referral by a court? Does LPS permit its doctors to consult with attorneys in the preparation of a defense that is based in part on a report rendered pursuant to a court order? Is the doctor paid by LPS for such services?

It is obvious that at least Dr. Maguigad, appellant's trial counsel, and an authoritative representative of Legal Psychiatric Services will need to be examined.

### III. *Need for an Ex Parte Hearing*

█ Section 3006A states that eligibility for appointment under the section will be determined in an *ex parte* proceeding.[13] The Fifth and the Tenth Circuits have repeatedly held that failure to accord an *ex parte* hearing is reversible error.[14] We agree that the statutory scheme means that not to provide an opportunity for an *ex parte* hearing on the matter does constitute error.

---

13. *See* text of statute at footnote 2, *supra.*

14. Marshall v. United States, 423 F.2d 1315, 1318 (10th Cir. 1970); United States v. Theriault, 440 F.2d 713, 715

(5th Cir. 1971); United States v. Hamlet, 456 F.2d 1284 (5th Cir. 1972) (per curiam); United States v. Sutton, 464 F.2d 552 (5th Cir. 1972) (per curiam).

We are satisfied that the 15 February 1972 letter of appellant's trial counsel to the trial judge was an *ex parte* submission of the issue to the trial judge. The matter was only raised at the 20 March 1972 calendar call because the request had not yet been acted on. The attendance and participation of the prosecutor at the disposition of appellant's request was in violation of the statute's requirements.

Trial counsel did not, however, object at the time to the presence of the prosecutor, or to the prosecutor's repeated intervention in a matter which by the plain language of the statute was definitely none of his business. However, as noted above, we do not yet know to what extent, if any, appellant was prejudiced by the failure to appoint a psychiatrist. It seems likely that the degree to which appellant's rights were affected by the failure to conduct an *ex parte* hearing may be closely related to the degree of prejudice caused by the failure to appoint a psychiatrist under § 3006A. We, therefore, reach no conclusion and make no holding on this issue at this time.

### IV. *Assault with a Dangerous Weapon*

Appellant was charged and convicted of both "assault with intent to rob while armed" and "assault with a dangerous weapon." It has been recently established in this Circuit that assault with a dangerous weapon is a lesser included offense of assault with intent to rob while armed.[15] At this time we therefore vacate appellant's conviction for assault with a dangerous weapon.

### V. *Conclusion*

Appellant's conviction for assault with a dangerous weapon is hereby vacated. We express no opinion at this time on the validity of the convictions on the remaining three counts. The record in this case is remanded to the District Court for a supplementary evidentiary inquiry on the matters discussed in Part II of this opinion. After receipt of the supplementary record this court will decide all remaining issues.

So ordered.

15. United States v. Benn, 155 U.S.App.D.C. ——, 476 F.2d 1127 (1972).