STATE of Iowa, Appellee,

v.

Glenn Lee McGHEE, Appellant.

No. 1–56310.

Supreme Court of Iowa.

Aug. 28, 1974.

McCracken, Carlin & Darbyshire, Davenport, for appellant.

Richard C. Turner, Atty. Gen., Stephen T. Moore, Asst. Atty. Gen., and Edward N. Wehr, Scott Co. Atty., for appellee.

Heard before MOORE, C. J., and MASON, RAWLINGS, REES and UHLENHOPP, JJ.

RAWLINGS, Justice.

On this appeal from judgment entered on jury verdicts finding defendant, Glenn Lee McGhee, guilty of numerous felonies, he challenges trial court's denial of an application for appointment of a psychiatrist to evaluate his time-of-offense criminal responsibility. We affirm.

March 17, 1972, McGhee was arrested in Rock Island, Illinois on charges stemming from a January 19, 1972, multiple murder related robbery of the Shamrock Tavern in Davenport, Iowa.

Appointment of counsel to represent the indigent accused was duly effected. Thereafter, on McGhee's application, an order was ultimately entered directing a psychiatric evaluation of defendant regarding his competency to stand trial. The court directed such examination be conducted at the Iowa Security Medical Facility, Oakdale, without prejudice to any subsequent request for additional psychiatric evaluation in order to prepare for trial.

June 20, 1972, Dr. Paul Loeffelholz, acting facility superintendent, submitted a report disclosing defendant was competent to participate in judicial proceedings. Other findings will be later set forth as they pertain to our consideration of the issue presented.

August 22, 1972, defense counsel filed application for authority to engage the services of a psychiatrist at county expense because: Defendant may change his not guilty plea to not guilty by reason of insanity; he needs a psychiatrist to aid in his defense; defendant is without funds; assistance of a psychiatrist is necessary in the preparation of an adequate defense, and to assure defendant a fair trial.

Hearing on the aforesaid application and the State's resistance thereto revealed defendant's attorney deemed himself professionally unqualified to change the not guilty plea in absence of a psychiatrist's advice; if McGhee's financial condition so permitted he could engage a psychiatrist; and equal protection of the law required approval of defendant's application.

August 31, 1972, defendant's last mentioned application was denied because, in essence, no grounds had been shown or were apparent making a psychological reexamination or evaluation of defendant necessary or essential.

McGhee unsuccessfully filed a post-verdict new trial motion, thereby asserting error in the overruling of his last above noted application.

I. As previously indicated the sole issue here to be resolved is whether trial court erred in denying defendant's request for authority to engage an independent psychiatrist, at public cost, to determine the feasibility of a not guilty plea by reason of insanity, and for defense assistance. See generally State v. Booth, 169 N.W.2d 869, 871 (Iowa 1969); State v. Hunley, 167 N.W.2d 645, 649 (Iowa 1969); State v. Gramenz, 256 Iowa 134, 138–142, 126 N.W.2d 285 (1964).

Noticeably no question is instantly presented nor do we reach the matter of any proceeding under The Code 1971, Section 783.1.

In support of his position McGhee initially invokes Code § 775.5, which provides, in material part:

"An attorney appointed by the court to defend any person charged with a crime in this state shall be entitled to a reasonable compensation to be decided in each case by the court, including such sum or sums as the court may determine are necessary for investigation in the interests of justice. * * * ."

Defendant further contends refusal of the aforesaid application served to deny him his constitutional rights to equal protection, due process, and effective assistance of counsel. In this regard see generally Ross v. Moffitt, —— U.S. ——, ——, 94 S.Ct. 2437, 2443, 41 L.Ed.2d —— (1974); State v. Williams, 207 N.W.2d 98, 104–106 (Iowa 1973).

Conceding psychiatric services come within the ambit of § 775.5, quoted above, the question posed is whether defendant made requisite showing of entitlement thereto.

We are therefore called upon to delineate the standard by which trial courts may determine whether an indigent defendant is entitled to benefit of independent psychiatric assistance at public expense.

II. The matter of an indigent's right to expert services under § 775.5 has twice been considered by this court. See State v. Williams, cited above; State v. Hancock, 164 N.W.2d 330 (Iowa 1969).

But neither of those cases dealt with the standard to be utilized in determining whether an indigent accused should be accorded assistance of a psychiatrist.

In *Hancock, supra,* the court held an application for leave to employ a handwriting expert was premature. At the same time we observed, "section 775.5 fairly contemplates payment for the purpose of obtaining an independent analysis of defendant's handwriting."

On the other hand these additional quotes from *Hancock,* 164 N.W.2d at 332, instantly come into play:

"This section [775.5] lodges limited discretionary power in the trial court to disburse reasonable compensation to an attorney defending an indigent for the purpose of conducting an investigation in the interests of justice.

"* * *

"The statute clearly protects against frivolous, unwarranted claims by restricting payment to those investigations which in the court's judgment are necessary in the interests of justice."

Later, in *Williams, supra,* we dealt with an application for funds with which to conduct a defense investigation and aptly commented, 207 N.W.2d at 105–106:

"While every criminal defendant who is financially unable to obtain counsel is entitled to appointment of counsel at state expense, not every similarly situated defendant is entitled to appointment of an investigator or to other expert services. Before authorizing such services to be furnished at state expense there must be a finding that they are necessary in the interest of justice.

"When counsel requests court authority for the employment of an investigator or experts, he should point out with specificity the reasons such services are

necessary. Although counsel has the primary responsibility to determine if such investigative services will be necessary, the proper and effective administration of section 775.5 requires the trial judge to satisfy himself that such services are necessary and to articulate the reasons therefor."

This court also said in *Williams,* 207 N. W.2d at 106:

"In view of the lack of specificity in defendant's application we conclude the trial court could not, on the sole basis of defendant's application, ascertain whether his claim was 'necessary in the interest of justice' or was 'frivolous and unwarranted.' "

Briefly stated, *Williams* demonstrates (1) our courts must perforce inceptionally rely upon an attorney's judgment as to the necessity of expert services in the defense of an indigent client, but (2) the attorney must specifically articulate the reason or reasons which serve to make such services necessary so the trial judge may independently determine the matter of need or necessity.

And, as observed in *Williams,* 207 N.W. 2d at 106:

"[T]rial courts in Iowa would be prudent in familiarizing themselves with the provisions of the Criminal Justice Act as amended October 1970 (18 U.S.C.A. section 3006A), particularly subsection (e), when considering applications under section 775.5, The Code."

Also, with regard to standards recently applied by some courts, under 18 U.S.C.A. § 3006A, in determining when expert services are necessary, see e. g., Brinkley v. United States, 498 F.2d 505 (8th Cir., 1974), United States v. Bass, 477 F.2d 723 (9th Cir. 1973); United States v. Chavis, 155 U.S.App.D.C. 190, 476 F.2d 1137 (1973); United States v. Theriault, 440 F.2d 713 (5th Cir. 1971); United States v. Taylor, 437 F. 2d 371 (4th Cir. 1971); United States v. Schultz, 431 F.2d 907 (8th Cir. 1970);

Williams v. United States, 310 A.2d 244 (D.C.Ct.App.1973). See also 18 U.S.C.A. § 4244; Annot., 34 A.L.R.3d 1256.

III. Five of the cases last above cited appear to provide helpful guidance in the formulation of an appropriate precept to be applied in the instant case and others of like nature.

First is United States v. Schultz, *supra.* The question there presented was whether an indigent defendant was entitled to services of a psychiatrist under 18 U.S.C.A. § 3006A(e). In resolving that issue the court said:

"No standard can be arbitrarily articulated covering all circumstances under which an accused demonstrates his entitlement * * * to services of experts to present an adequate defense. * * *

"* * * Judge Murrah's opinion [Christian v. United States, 398 F.2d 517 (10 Cir. 1968)] refers to the interrelated responsibility between defense counsel and the trial court in assuring a defendant a fair opportunity to prepare and present his defense to a criminal charge. *The accused's counsel bears the primary responsibility to determine if subsection (e) services 'will be necessary'; while the trial judge must approve the request and 'articulate the reasons therefor'.* 398 F.2d at 519." United States v. Schultz, 431 F.2d at 909–910 (Emphasis added).

A year later, in United States v. Theriault, *supra,* Judge Wisdom, concurring specially, opined the due process requirement that indigent defendants be allowed court appointed experts when their case would otherwise be prejudiced is based upon "equality between 'indigents and those who possess the means to protect their rights.' " 440 F.2d at 716–717. Judge Wisdom then advocated this implementation of § 3006A(e):

"I would read the statute, therefore, as requiring authorization for defense services when the attorney makes a rea-

sonable request in circumstances in which he would independently engage such services if his client had the financial means to support his defenses. The trial judge should tend to rely on the judgment of the attorney, who has the primary duty of providing an adequate defense. Such reliance is recommended by the difficulty of requiring the trial judge to take an adversary view of the case. * * *.

"I do not mean to suggest that the trial court should grant such requests automatically. * * * Nor should the trial judge authorize an obviously frivolous expenditure by the defendant. But he should have a healthy respect for the judgment of the defense attorney in making his findings of necessity."

The foregoing views were essentially adopted in United States v. Bass, 477 F.2d at 725. As there stated:

"The statute requires the district judge to authorize defense services when the defense attorney makes a timely request in circumstances in which a reasonable attorney would engage such services for a client having the independent financial means to pay for them."

In contrast, United States v. Chavis, *supra,* opted for a more elaborate evaluation of necessity by placing more emphasis upon the trial judge's duty under these guidelines, 476 F.2d at 1143:

"First, a judge should consider the likelihood that an insanity defense is warranted. Obviously a court should not be required to appoint a psychiatrist if there is absolutely no reason to think that such a plea would be successful. A trial judge's evaluation of this factor could, among other things, be based upon a prior medical history of psychological imbalence, testimony by those acquainted with the defendant regarding his actions and apparent mental state, or the judge's own evaluation of the defendant's demeanor. Second, the judge should consider wheth-

er the defendant has received sufficient psychiatric assistance from other sources; * * *."

More recently, in Brinkley v. United States, 498 F.2d at 510, the Court said:

"Although there is merit to the elaborate evaluative process espoused by the D.C. Circuit in [United States v. Chavis, 476 F.2d 1137] we think a more direct approach is preferable. We agree with [United States v. Theriault, 440 F.2d 713 (5th Cir. 1971)] adopted by the Ninth Circuit in [United States v. Bass, 477 F.2d 723 (1973)] that the trial judge should tend to rely on the judgment of the defense attorney if the latter 'makes a reasonable request in circumstances in which he would independently engage such services if his client had the financial means to support his defenses.' 440 F.2d at 717. See Comment, 'Developing Standards for Psychiatric Assistance for Indigent Defendants under the Criminal Justice Act,' 59 Iowa L.Rev. 726 (1974). This is nothing more than the 'reasonableness standard' which we applied in United States v. Schultz, supra, 431 F.2d at 911–912."

Although the Eighth Circuit, in *Brinkley,* apparently deemed it necessary to choose between the *Bass-Theriault-Chavis* principles we are persuaded a combined *Bass-Chavis* approach is more feasible.

Conceding the *Bass* "reasonable attorney" concept provides a good *starting point,* that alone does not suffice. In the first place concern for the accused might understandably obscure defense counsel's objectivity regarding the need for psychiatric services. By the same token, the trial judge is illogically placed in a position akin to that of an automaton. See 59 Iowa L. Rev. 726, 731–732, 736 (1974).

The flaw in employing *Bass* alone is essentially remedied, however, by utilization of *Chavis* as an additional requisite in the adjudication process, i. e., an objective ad

hoc evaluation of all relevant facts and circumstances. We hereby adopt that concept.

 Under this combined *Bass-Chavis* standard, defense counsel in seeking benefit of psychiatric advice, at public expense, regarding an accused's time of offense mental competency or capacity, must make timely request for same, therein setting forth the specific reasons upon which counsel concludes (1) those services are reasonably needed or necessary, and (2) such services would otherwise be justifiably obtained were defendant financially able. The trial court (1) shall accord considerable weight to the application so made but is not thereby bound, and (2) in determining whether an insanity defense is reasonably warranted or psychiatric services are otherwise needed in defending the accused, shall effect an objective evaluation of such application, taking into consideration all relevant factors, including but not limited to (a) defendant's prior medical history as to any mental or emotional instability, (b) his past conduct, and (c) defendant's apparent mental state and demeanor as observed by the trial judge. It is also understood, hearing shall be permitted upon any such application and resistance thereto, in course of which defense counsel must be allowed to explain any factors considered in making the application. If trial court, focusing upon needs of defense counsel, finds the application is reasonable then it should be granted, but if found to be frivolous, unreasonable or without underlying factual support then a denial is in order. In either event the trial judge shall make and enter appropriate findings of fact and conclusions of law with attendant order.

IV. It is for us to now apply the foregoing test to the factual situation here disclosed in determining whether trial court erred in denying defendant's application.

At cost of some repetition we must again look to the record. It reveals that seven days after arraignment defendant filed an initial application for a psychiatric evaluation to determine his fitness to stand trial. This application was ultimately granted. Defendant was accordingly examined over a two week period, after which a report was made by the acting Iowa Security Medical Facility superintendent. This disclosed defendant was fully competent to participate in trial proceedings; the applicable diagnosis is a rather severe antisocial personality; defendant has a marked tendency to rationalize his criminal behavior on the basis of flashbacks related to previous aggressive incidents occurring in his life, and he believes those flashbacks predispose him to act in a continuing aggressive manner under minimal provocation; at time of the alleged criminal acts defendant was not under the influence of drugs, alcohol or any type of mental illness which could preclude willfulness or premeditation his alleged acts would have required.

August 22, 1972, defense counsel filed the instantly involved application for authority to engage a psychiatrist, thereby alleging, as heretofore disclosed, defendant was considering changing his plea to not guilty by reason of insanity; he needs the aid of a psychiatrist in the preparation of his case but is without funds; psychiatric services are necessary to assure adequate preparation of the case and to assure defendant a fair trial.

During hearing on the above application and resistance thereto, defendant's attorney substantially reiterated the allegations contained in his application.

Trial court denied defendant's application and in so doing stated, insanity is not an issue; the first psychiatric report contains nothing which would give rise to such an issue; and no additional or further grounds are apparent which disclose the necessity for a reexamination or evaluation.

On appeal defendant advances several reasons which assertedly support his claim that trial court's denial of the application was an abuse of discretion. He first con-

tends the juvenile court records of Rock Island County, Illinois (forwarded to the Scott County Juvenile Court) disclose defendant is a hostile, assaultive and uncontrollable young man, *and trial court could have had access to those records on request*. It is also contended the psychiatric report by Dr. Loeffelholz indicates defendant may have had serious problems relative to "flashbacks", antisocial attitude, and a marked tendency to rationalize his criminal behavior. Defendant also here asserts, invocation of the specificity standard, *supra,* is unfair in this case since the defendant has had little contact with agencies or institutions ordinarily charged with treatment of behavioral or criminal problems.

■ V. By way of exclusion we turn inceptionally to defendant's argument to the effect of his juvenile records were availble and would ostensibly have supported the application for authority to engage the services of a psychiatrist. Apparently defendant contends the trial judge, on his own initiative, should have taken judicial notice of the records in other proceedings in another court. This is a paralogistic stand. See Johnson v. Johnson, 188 N.W. 2d 288, 293 (Iowa 1971); Hawkeye-Security Insurance Co. v. Ford Motor Co., 174 N.W.2d 672, 685 (Iowa 1970); Bales v. Iowa State Highway Comm., 249 Iowa 57, 63, 86 N.W.2d 244 (1957).

■ Further analysis reveals defendant's application was timely but dealt in conclusory allegations rather than factual statements which might have aided trial court in objectively effecting a decision. If, in fact, there existed good cause for making such application no undue burden was imposed upon defense counsel in requiring a disclosure of his underlying reason or reasons.

In evaluating the reasonableness of defendant's request under the aforesaid standard it is evident there was no abuse of discretion by trial court in denying the application. No history as to any prior psychological imbalance on defendant's part was shown. No evidence was presented by defendant regarding any past mental aberration on his part. And even though the aforesaid report by Dr. Loeffelholz is, arguendo, open to different conclusions, it reveals defendant was not in any sense insane when the instantly charged crimes were committed. Neither did defense counsel at any time specify the reason for his generally claimed need of a psychiatrist in order to effectively defend, or to assure defendant a fair trial. In brief, no adequate showing was made upon which trial court would have objectively determined whether further examination by a psychiatrist was in any sense reasonably needed or necessary.

Under existing conditions we conclude and now hold defendant's sole assignment of error is devoid of substance.

Therefore, any discussion regarding asserted constitutional rights is obviated.

Affirmed.