STATE of Iowa, Appellee,

v.

Rasberry (NMN) WILLIAMS, Appellant.

No. 58421.

Supreme Court of Iowa.

June 30, 1976.

Walter W. Rothschild, Waterloo, for appellant.

Richard C. Turner, Atty. Gen., Earl W. Roberts, Jr., Asst. Atty. Gen., and David J. Dutton, County Atty., for appellee.

Heard by MOORE, C. J., and MASON, RAWLINGS, REYNOLDSON and McCORMICK, JJ.

REYNOLDSON, Justice.

July 20, 1974, defendant Rasberry Williams fatally shot Lester "Lamp Light" Givhan in front of George's Pool Hall in Waterloo, Iowa. This daytime incident resulted from a quarrel over a claimed indebtedness and was witnessed by several persons, some of whom attempted to dissuade defendant. The facts surrounding the crime have no further significance: the only issues raised concern trial court's adverse rulings on defendant's motion for psychiatric examination at State expense, and his objections to the petit jury panel. We affirm his first degree murder conviction.

I. *Should trial court have ordered a psychiatric examination at State expense?*

Defendant argues trial court's failure to provide him with a psychiatric examination constituted an abuse of discretion in depriving him of his statutory right under § 775.5, The Code, and violated his constitutional rights to effective counsel, due process and equal protection.

The constitutional rights of effective assistance of counsel and equal protection, preserved for an accused by both the federal and state constitutions, are implemented in Iowa by § 775.4 and § 775.5, The Code. *State v. Campbell,* 215 N.W.2d 227, 229 (Iowa 1974). We have consistently construed those statutes to carry out the constitutional objectives. See *Schmidt v. Uhlenhopp,* 258 Iowa 771, 140 N.W.2d 118 (1966) (defendant entitled to court-appointed counsel despite his mother's deposit of cash in lieu of bail); *State v. Miller,* 204 N.W.2d 834, 844 (Iowa 1973) (appointed attorney is entitled to reasonable compensation); *Woodbury County v. Anderson,* 164 N.W.2d 129, 132 (Iowa 1969) (the court making the appointment determines the extent of the county's liability, leaving no discretion to the county officers); *Furey v. Crawford County,* 208 N.W.2d 15 (Iowa 1973) (trial court's determination of reasonable compensation is reviewed in this court on original writ of certiorari).

In *State v. Hancock,* 164 N.W.2d 330, 332 (Iowa 1969) we said a court-appointed attorney should not be required to incur personal expenses in preparing and conducting a meaningful and conscientious defense for the accused. We there held trial court erroneously overruled defendant's application for funds to obtain an independent expert analysis of her handwriting for comparison with the allegedly forged check. Id. at 333.

We reversed again in *State v. Campbell,* supra, for trial court's refusal to provide a transcript of the trial of an alleged accomplice, stating, 215 N.W.2d at 229, the right to effective counsel "means not only providing defendant with a lawyer; it also means providing that lawyer with the opportunity—in both time and tools—to perform his often onerous task competently and conscientiously."

We held requests for such trial preparation assistance must be on a showing the

expense was "necessary in the interest of justice." *State v. Williams,* 207 N.W.2d 98, 105 (Iowa 1973); *State v. Hancock, supra,* 164 N.W.2d at 332. In a related decision based solely on equal protection we ruled no showing of necessity was required when the issue was the availability of a transcript of a pre-trial proceeding in defendant's case:

"[E]qual protection requires that a verbatim record be made of preliminary hearing at public expense, when timely requested by an indigent defendant, unless the State shows a record of sufficient completeness can otherwise be kept."

—*State v. Lewis,* 215 N.W.2d 293, 295 (Iowa 1974).

Finally, in *State v. McGhee,* 220 N.W.2d 908, 913 (Iowa 1974) we articulated the definitive standard to be applied in considering an application for psychiatric evaluation. The *McGhee* standard, *inter alia,* requires trial court to give considerable weight to the application but permits it to "effect an objective evaluation * * * taking into consideration all relevant factors, including but not limited to (a) defendant's prior medical history as to any mental or emotional instability, (b) his past conduct, and (c) defendant's apparent mental state and demeanor as observed by the trial judge." 220 N.W.2d at 913. We there said:

"If trial court, focusing upon needs of defense counsel, finds the application is reasonable then it should be granted, but if found to be frivolous, unreasonable or *without underlying factual support* then a denial is in order." (Emphasis supplied.)

—Id.

■ In this case defendant filed four applications for psychiatric evaluation. He concedes his first did not comply with the requirements of *McGhee* and was properly denied. The second application alleged counsel had learned defendant sustained a head injury "approximately two years ago which they believe to be an important factor in defendant's alleged behavior."

Upon defendant's written application the court made an in-camera inspection of de-fendant's medical and hospital records relating to this injury, then ruled defendant should be examined by Dr. Robert Kyle of Cedar Falls, his treating neurosurgeon, "for an evaluation of his present condition, as it relates to any residual effect from the head injury sustained by said Defendant in June, 1968, particularly as the Defendant's present condition may relate to his ability to stand trial, to distinguish between right and wrong, to cooperate with and assist his counsel in his defense, and such other matters as may relate to Defendant's mental condition at this time and at the time the alleged criminal activity in this case occurred on or about July 20, 1974."

Defendant never offered the report of this examination. We assume it was unfavorable. His "Renewed Motion" for a psychiatric examination, filed a week later, reported, "Dr. Kyle is unable to provide the information sought by Defendant's counsel." This motion was denied for failure to comply with the *McGhee* guidelines.

The fourth motion again alleged defendant's head injury and counsel's belief defendant suffered mental disease on the basis 1) he was unable to recall certain events, 2) he behaved bizarrely, 3) his statements were frequently unrealistic, and 4) he failed to keep appointments.

At the hearing on the motion defendant did not appear in person. No evidence was introduced. Trial court's detailed, adverse ruling included the findings defendant's medical history and hospital records did not show a mental or emotional instability; Dr. Kyle's report was not submitted; defendant did not appear at the hearing, and allegations of the motion were conclusory as opposed to statements of specific facts.

The question here is close. However, we conclude trial court did not abuse its discretion in overruling the motion which, as in *McGhee,* "dealt in conclusory allegations rather than factual statements which might have aided trial court in objectively effecting a decision." 220 N.W.2d at 914.

In so ruling, we again advise trial courts (as we did in *Williams,* 207 N.W.2d at 106

and *McGhee,* 220 N.W.2d at 911) to consider carefully the federal statutes designed to implement the same constitutional safeguards, and specifically, 18 U.S.C.A. § 3006A(e).

II. *Did trial court err in overruling defendant's objection to the jury panel?*

Defendant's objections to the jury panel were based on the procedure used to prepare the jury list. The parties stipulated the evidentiary record made on submission of a similar motion in another pending criminal case should apply here.

On appeal defendant argues § 609.1(2), The Code, required the jury commissioners to select the list of jurors from the whole body of electors in the county and not from the registered voter list. He also asserts because deprived persons are less likely to vote, use of the registered voter list eliminates from jury service "the poor, black, and other deprived minorities in society," in violation of defendant's constitutional rights.

Section 609.1 relevantly provides:

"*609.1 Jury lists.* The appointive jury commission shall * * * prepare, select, and return * * * the following lists, to-wit:

1. *Grand jurors.* * * *

2. *Petit jurors.* A list of names and addresses of electors equal to one-eighth of the whole number of qualified electors in the county as shown by the election registers of the previous general election, from which to select petit jurors.

3. *Talesmen.* * * *"

In *Buchmeier v. Pickett,* 258 Iowa 1224, 1228, 142 N.W.2d 426, 428 (1966) we observed "[t]he meaning of 'electors' is not subject to arguments, it is a word of art which we have construed to refer to the definition in Article II, section 1 of the Iowa Constitution." We ruled wherever the legislature employed the word "elector" without qualification or explanation the word has reference to a person authorized by the constitution to exercise the elective franchise; that all voters must be electors, but the converse is not true. Id., 258 Iowa at 1228–1229, 142 N.W.2d at 429.

The record on submission of defendant's objections disclosed the jury commission did employ a print-out of the registered voter list in selecting the petit jurors. We do not construe § 609.1, The Code to mean the commission was required to prepare an expanded list of all electors in the county from which to make up the petit jury list. The statutory requirement of "electors" goes to the qualifications for each name included on the jury list; it does not require a source listing *all* qualified electors in the county.

Other courts confronting the issue whether poll lists may be used to satisfy the statutory requirement of a list of "electors" have held this procedure is a reasonable means of complying with the statutes. See, e. g., *People v. McCrea,* 303 Mich. 213, 277, 6 N.W.2d 489, 514 (1942), cert. denied, 318 U.S. 783, 63 S.Ct. 851, 87 L.Ed. 1150 (1943); *State v. Bond,* 41 Wis.2d 219, 226, 163 N.W.2d 601, 604 (1969).

While the jury commission might well look to other supplementary sources, e. g., telephone directories, public utility billing lists, or tax rolls in selecting the petit jury list, it is plain there was no violation of § 609.1 in employing the registered voter print-out for that purpose. It was the prime source of qualified electors.

Finally, we turn to defendant's claim the manner of preparing the jury list violated his constitutional rights. Defendant's objections to the panel alleged he was black and, as above mentioned, use of the registered voter print-out tended to eliminate "the poor, blacks, and other deprived minorities." The record before us does not disclose the composition of the jury selected to try defendant's case. It does reveal a black jury commissioner who was assigned that portion of the print-out listing registered voters in precincts with heavy black populations purposefully selected blacks in order to balance selections from those precincts of predominantly white registrants.

Jimmy Porter, a black deputy registrar in Black Hawk County, testified in his opinion

about 60 percent of black persons in the community and eligible to vote were registered. His "studies show that the less income in a particular area, the lesser is the voting pattern in that area." The record does not disclose the percent of white persons in the community who were registered to vote; nor are the statistical bases and parameters of this witness' study revealed.

Defendant has a constitutional right to an impartial jury. Iowa Constitution, Article I, § 10; United States Constitution, Amendment VI. This right is violated when a systematic and intentional exclusion of an identifiable eligible group prevents a jury from being representative of the community. *Apodaca v. Oregon,* 406 U.S. 404, 413, 92 S.Ct. 1628, 1634, 32 L.Ed.2d 184, 193 (1972); *Swain v. Alabama,* 380 U.S. 202, 208–209, 85 S.Ct. 824, 829, 13 L.Ed.2d 759, 766 (1965); *State v. King,* 225 N.W.2d 337, 342 (Iowa 1975); *State v. Knutson,* 220 N.W.2d 575, 577 (Iowa 1974).

But the United States Supreme Court has declared "[o]ur duty to protect the federal constitutional rights of all does not mean we must or should impose on states our conception of the proper source of jury lists, so long as the source reasonably reflects a cross-section of the population suitable in character and intelligence for that civic duty." *Brown v. Allen,* 344 U.S. 443, 474, 73 S.Ct. 397, 416, 97 L.Ed. 469, 498 (1953). In holding states have "broad discretion * * * in this respect" the court in *Taylor v. Louisiana,* 419 U.S. 522, 538, 95 S.Ct. 692, 702, 42 L.Ed.2d 690, 703 (1975) observed:

"[W]e impose no requirement that petit juries actually chosen must mirror the community and reflect the various distinctive groups in the population. Defendants are not entitled to a jury of any particular composition, (citations) but the jury wheels, pools of names, panels or venires from which juries are drawn must not systematically exclude distinctive groups in the community and thereby fail to be reasonably representative thereof."

Absent a showing of systematic discrimination, other courts have consistently turned back constitutional assaults on the use of voter registration lists as the sole source of names for jury duty. *United States v. Whitley,* 491 F.2d 1248, 1249–1250 (8 Cir.), cert. denied, 416 U.S. 990, 94 S.Ct. 2399, 40 L.Ed.2d 769 (1974); *United States v. Test,* 399 F.Supp. 683, 688–691 (D.Colo. 1975); *United States v. Briggs,* 366 F.Supp. 1356, 1358–1359 (N.D.Fla.1973); *State v. Zdiarstek,* 53 Wis.2d 776, 780–781, 193 N.W.2d 833, 835–836 (1972).

Defendant had the burden of establishing a prima facie case that the Black Hawk County selection procedure systematically excluded a particular group. *Apodaca,* supra, 406 U.S. at 413, 92 S.Ct. at 1634, 32 L.Ed.2d at 193. Trial court properly ruled the record made here failed to meet that test.

The judgment below is affirmed.

AFFIRMED.