## THE COUNTY OF LANDER, Appellant, *v.* THE BOARD OF TRUSTEES OF THE ELKO GENERAL HOSPITAL, Respondent.

No. 4813

June 24, 1965                    403 P.2d 659

*George G. Holden,* District Attorney, and *Roger William Macdonald,* Deputy District Attorney, Lander County, for Appellant.

*Joseph O. McDaniel,* District Attorney, and *Philip M. Marfisi,* Deputy District Attorney, Elko County, for Respondent.

**O P I N I O N**

By the Court, BADT, J.:

This appeal from a judgment in favor of respondent and against the appellant county in the sum of $5,416.64 for the balance due for hospital services rendered to a resident of Lander County, who was without means to pay the same, presents the following issues. These issues, although not so stated in appellant's opening brief, appear to us to be (1) whether the Elko General Hospital had the right in the first instance to make the determination that the patient, one Frank P. Grunstad, was an indigent or poor person; (2) whether, assuming the hospital had this right, Grunstad was in fact an indigent or poor person as held by the trial court; and (3) whether the respondent hospital gave sufficient notice to the appellant county in compliance with the requirements of the statute.

We first turn to the facts. Frank P. Grunstad resided in Battle Mountain, Lander County, Nevada, for many years prior to his last illness and death, it being conceded by all parties that he was a legal resident of this town. He died July 24, 1963, at the Elko General Hospital of pulmonary hemorrhage due to recurrent carcinoma of the esophagus.

For many years prior to his death, Mr. Grunstad lived in or near Battle Mountain, in Lander County, and was engaged in various mining and other ventures. At the time of his initial hospitalization in February, 1963, he was unemployed but drawing old-age insurance benefits. His livelihood was substantially dependent upon these insurance payments, even though testimony at the trial

indicated he did odd jobs from time to time as they were available and as his health permitted. He had never applied for or been granted indigent or pauper's aid by Lander County or the state. He owned no real or personal property except his immediate personal effects. He had recently owned an automobile which was wrecked and apparently never repaired. He has at least two brothers, one living in Sparks, Nevada, who appeared and testified as a witness for the plaintiff-respondent, and one living somewhere in California.

Mr. Grunstad traveled to Elko from Battle Mountain in February, 1963, and as a private patient consulted John M. Read, M.D. He was admitted to the Elko General Hospital under the care of Dr. Read on February 13, 1963. An esophageal biopsy was performed by Hugh S. Collett, M.D., on February 14. Mr. Grunstad was discharged from the hospital on February 15, after incurring charges of $139.20, which sum was paid through his insurer, Bankers Life of Chicago, Illinois. There is no evidence that he was looked upon or considered to be an indigent during this period of hospitalization. No notice of this hospitalization or his financial condition was given to Lander County.

On March 6, 1963, he was re-admitted to the Elko General Hospital and two major operations were performed upon him. He remained in the hospital until his death on July 24, 1963. From the date of his re-admission to the hospital until his death, he was under the care of Dr. Collett, and at no time was his condition sufficiently improved to enable him to leave the hospital and be cared for either at home or at the hospital in Battle Mountain. His hospital ledger sheet indicates he lived in Battle Mountain, was an unemployed laborer, classified as insured, gave the name and address of his brother in Sparks, and listed his insurance carrier as Bankers Life under policy No. 54562431. When he died, he had incurred hospitalization costs of $6,006.75. Of this sum, $139.20 was apparently paid by his insurer; and his brother, D. W. Grunstad, testified that he paid $450.91 from the proceeds of three social security checks belonging to the decedent, which he had obtained in

some sort of probate proceedings in Washoe County. Part of the latter funds were applied to the payment of the decedent's debts and his funeral expenses, the remainder of the balance available being paid to the Elko General Hospital. These transactions left a balance owing the hospital of $5,416.64, the amount of the judgment recovered by the respondent in the lower court.

The first notice given Lander County by the Elko Hospital that Mr. Grunstad was a patient there, claimed by the hospital to be a resident of Lander County, an indigent, pauper, poor person or incapacitated by disease, and the responsibility of Lander County was the notice or letter, dated March 8, 1963. This letter, signed by the business manager of the hospital, was addressed to the "Board of County Commissioners, Lander County, Austin, Nevada."[1] It was received by the clerk of that board, placed in a drawer in her office and brought to the actual and official attention of the board at its next regular meeting in Austin, April 5, 1963. The clerk, pursuant to directions of the board, notified Elko General Hospital by letter dated April 8, 1963, that Mr. Grunstad was not a Lander County patient. Thereafter, Elko General Hospital from time to time sent statements of account and vouchers to Lander County, none of which was ever acted upon.

Respondent filed its action against Lander County on the basis of the provisions of NRS 450.400 quoted in full in the margin,[2] and recovered judgment.

---

[1] The letter was signed by the business office manager of Elko General Hospital and was in the following words:

"Please be advised that Frank P. Grunstad who reports his address as Box 243, Battle Mountain, Nevada, was admitted to the Elko General Hospital on 3/6/63 under the care of Dr. Collett.

"The above mentioned patient reports: [he] became sick in your county, * * * and under section 450.000 of the Nevada Revised Statutes hospital privileges are being extended to this patient.

"Information regarding this patient may be secured from the attending Physician. Would you kindly forward your county voucher for submission of claim?"

[2] "1. When the privileges and use of the hospital are extended to a resident of another county who is entitled under the laws of this state to relief, support, care, nursing, medicine, medical or surgical aid from such other county, or to one who is injured, maimed

The appellant county contends that the determination of Grunstad's status was entirely within the jurisdiction of the Board of County Commissioners of Lander County and that said county commissioners were unlawfully ousted of such jurisdiction by the action of the superintendent of the Elko General Hospital in determining that Grunstad was a pauper or poor or an indigent person. We think, however, that it is clear from a reading of NRS 450.400 that the original determination of Grunstad's status must be made by the hospital.

The factual determination is beyond doubt, as Grunstad's assets were grossly inadequate to provide the needed medical care. A realization on all his assets provided only $450.91 on the hospital's bill of $6,006.75. Evidence as to his status and as to the extent of his assets and as to the hospital bill were all produced before the district court and amply justify the court's findings.

The notice addressed to the Board of County Commissioners of Lander County complied in all respects with the requirements of the statute.

A county's obligation to support indigents, paupers, and poor people results only from a statutory provision imposing such a legal obligation. 41 Am.Jur., Poor and Poor Laws § 2. This obligation is fixed in this state by

---

or falls sick in such other county, the governing head shall immediately notify the board of county commissioners of such county.

"2. The notice shall be in writing and addressed to the board of county commissioners of such county.

"3. The board of county commissioners receiving the notice shall cause such person to be removed immediately to that county, and shall pay a reasonable sum to the hospital for the temporary occupancy, care, nursing, medicine, and attendance, other than medical or surgical attendance, furnished such person.

"4. If the board of county commissioners shall neglect or refuse to remove such person, or if in the opinion of the attending physician it is not advisable to remove such person, the governing head shall have a legal claim against the county for all occupancy, nursing, care, medicine, and attendance, other than medical or surgical attendance, necessarily furnished, and may recover the same in a suit at law."

the provisions of NRS 428.010 and 428.050, which are set forth in the margin.[3]

In Outagamie County v. Town of Brooklyn, 18 Wis.2d 303, 118 N.W.2d 201, a similar situation as here presented faced the Wisconsin court. In that case a resident of Washburn County was taken ill in Outagamie County and rushed to a hospital in that county. The director of the Outagamie County department of public welfare investigated the financial status of the patient and concluded that she was a "dependent" person. Wisconsin law provides that a county giving needed medical aid to a resident of another county has a right to collect for all expenses from the county of the person's residence. Outagamie County promptly gave Washburn County the non-resident notice required by law, and Washburn County denied liability. Outagamie County commenced proceedings before the State Department of Public Welfare as required by law to recover from Washburn County the amount of relief furnished. The board upheld Outagamie County's claim. This determination was reversed by the circuit court because there was no competent evidence relating to the financial condition of the patient and the need for hospital care. On appeal, the court reversed the circuit court and upheld the welfare department's determination. The court stated that the law commits to the local authorities the quasi-judicial duty of determining whether a person is in need of relief, and that the county relief authorities must make this factual determination before granting relief to a person who is a resident of another county. Once made, the determination by the Outagamie official is cloaked with the presumption of regularity and it is presumed that relief was extended only after first determining that

[3]NRS 428.010 "1. Every county shall relieve and support all pauper, incompetent, poor, indigent persons and those incapacitated by age, disease or accident, lawfully resident therein, when such persons are not supported or relieved by their relatives or friends, or by their own means, or by state hospitals or other state or private institutions."

NRS 428.050 "When application is made by any pauper to the board of county commissioners and it shall appear to the satisfaction of the board that the person so applying for relief has resided in the state and county for the times required by NRS 428.040, he shall be entitled to all of the relief provided by this chapter."

the patient was a dependent. While this presumption is rebuttable, Washburn County presented no evidence whether the patient qualified as a dependent. And since the presumption of regularity was not rebutted, the court held that Outagamie County's determination should stand. The court finally considered what evidence was produced to show that the patient had financial resources sufficient to prevent her from qualifying as a dependent. The court held that evidence of a homestead and an automobile was insufficient to establish that she was not a dependent; and in any event, this property was not sufficient to pay for the needed hospital and medical care.

Authorities to the contrary did not involve such a statute as NRS 450.400.

Lander County of course had the right to challenge Grunstad's status in the action in the district court and to rebut the hospital's determination that he was entitled to relief and aid. This it attempted to do without success. The evidence shows that he was previously hospitalized and his insurance company paid his $139.20 bill; that he received old-age insurance payments which he lived upon; that he had no assets or real property; and that he was unemployed prior to being admitted to the hospital in March. The appellant tried to establish that Mr. Grunstad had a good credit standing in the community. The sheriff of Lander County testified that Mr. Grunstad always paid his $10 a month cabin rent one month in advance; and to the question of whether Mr. Grunstad was a man in the community whose credit was good, he stated, "yes, because I never heard anything to the contrary."

Although a person has some property, he may still be considered a pauper or indigent if such property is not available for his immediate relief or is manifestly disproportionate to his needs. Annot., 98 A.L.R. 870, 872; 41 Am.Jur., Poor and Poor Laws §§ 17–20. And it has been held that a person does not have to be completely destitute and helpless to be considered a destitute or

indigent person, but can have some income or own some property. Home for the Jewish Aged v. Kotzker, 179 Pa.Super. 521, 118 A.2d 271; Inhabitants of Town of Bethel v. Inhabitants of Town of Hanover, 151 Me. 318, 118 A.2d 787; Alameda County v. Janssen, 16 Cal.2d 276, 106 P.2d 11, 130 A.L.R. 1141. It seems obvious that Mr. Grunstad did not have the financial resources to cover even a quarter of the hospital bill.

Appellant relies on Lander County v. Humboldt County, 21 Nev. 415, 32 P. 849. The statute under which that case was decided permitted recovery only when the aid was given to a non-resident pauper. The present statute has been expanded and a county giving aid to a non-resident pauper, a poor or indigent person, or an old or diseased person may recover from the county of that person's residence. Therefore, this early Nevada case is not binding authority.

Two rulings of the trial court on the admissibility of evidence are cited as reversible. We do not so find them and consider any enlarged discussion unnecessary.

The judgment is affirmed.

THOMPSON, J., and ZENOFF, D. J., concur.