**Mark Felix ENGLISH, Appellee,**

v.

**The Honorable Dale S. MISSILDINE, Judge, Polk County District Court in his official capacity only, Appellant.**

No. 65087.

Supreme Court of Iowa.

Oct. 21, 1981.

Alfredo G. Parrish of Parrish & Del Gallo, Des Moines, for appellee.

Thomas J. Miller, Atty. Gen., Shirley Ann Steffe, Asst. Atty. Gen., Channing Dutton and Thomas Werner, Asst. Polk County Attys., for appellant.

Considered by REYNOLDSON, C. J., and UHLENHOPP, McCORMICK, McGIVERIN and SCHULTZ, JJ.

McCORMICK, Justice.

The question here is whether an indigent has the right to employ an expert and take depositions at public expense when he is represented by private counsel. Plaintiff Mark Felix English is an 18-year-old indigent who is charged with theft in the third degree under section 714.1(3), The Code. His mother retained private counsel for him through payments totalling $900. Because she could not afford to pay for the services of a handwriting expert or deposition expenses, plaintiff applied for those services at county expense. When the trial court denied the application, he brought this certiorari action. We sustain the writ.

No issue is presented concerning the reasonable necessity of the desired services under the standard delineated in *State v. McGhee*, 220 N.W.2d 908, 913 (Iowa 1974). Handwriting identification is disputed in the case, and the State plans to offer expert testimony. Moreover, plaintiff has a legitimate interest in pursuing discovery. The State has already deposed his alibi witnesses.

The only question is whether plaintiff is entitled to investigative services at public expense. Three possible sources of authority were urged in the trial court and are reiterated here. They are section 815.7, The Code, Iowa R.Crim.P. 19(4), and U.S. Const. amend. VI, as applicable to the states through the fourteenth amendment.

Section 815.7 authorizes fees and sums for investigative services to court-appointed attorneys. *See Hulse v. Wifvat*, 306 N.W.2d 707 (Iowa 1981). If plaintiff were represented by a court-appointed attorney, the State concedes the statute authorizes public payment of the services he desires. *See State v. Hancock*, 164 N.W.2d 330, 332

(Iowa 1969). However, the statute does not address the issue of furnishing those services to indigents represented by private counsel.

Iowa R.Crim.P. 19(4) does not reach the present issue either. It provides:

Counsel for a defendant who is financially unable to obtain expert or other witnesses necessary to an adequate defense of the case may request compensation in a written application. Upon finding, after appropriate inquiry, that the services are necessary and that the defendant is financially unable to provide compensation, the court shall authorize counsel to obtain such witnesses on behalf of the defendant. The court shall determine reasonable compensation for the services and direct payment to the person who rendered them pursuant to chapter 815, The Code.

The rule is authority for public payment of witnesses for indigents at trial. It does not distinguish between indigents who are represented by court-appointed and private counsel. Therefore it is authority for permitting an indigent defendant represented by private counsel to obtain the testimony of expert witnesses at trial at public expense. It is comparable to Fed.R.Crim.P. 17(b) and is similar in purpose to section 781.2, The Code 1977. It is not authority for paying investigative expenses. *See Hancock*, 164 N.W.2d at 333 ("Defendant's pre-trial request for allowance of witness fees for a handwriting expert whom she would wish to call at trial was premature and properly denied."). The rule implements an indigent defendant's right to compulsory process and to present a defense. *Cf. United States v. Hegwood*, 562 F.2d 946, 952 (5th Cir. 1977) (giving a similar interpretation to Fed.R.Crim.P. 17(b)); *People v. Watson*, 36 Ill.2d 228, 221 N.E.2d 645 (1966) (recognizing the right on constitutional grounds).

We believe authority for the services requested by plaintiff exists under his sixth amendment right to effective representation of counsel. For indigents the right to effective counsel includes the right to public

payment for reasonably necessary investigative services. *State v. Williams,* 207 N.W.2d 98, 104–05 (Iowa 1973); *see also Hancock,* 164 N.W.2d at 333 ("the denial of defendant's request for a handwriting analysis has overtones sounding in due process and equal protection of the laws"). The Constitution does not limit this right to defendants represented by appointed or assigned counsel. The determinative question is the defendant's indigency. When his indigent status is established the "defendant is constitutionally entitled to those defense services for which he demonstrates a need." *People v. Worthy,* 109 Cal.App.3d 514, 520, 167 Cal.Rptr. 402, 406 (1980); *see* 3 C. Wright, Federal Practice and Procedure: Criminal § 740 at 235 (1969); Margolin and Wagner, *The Indigent Criminal Defendant and Defense Services: A Search for Constitutional Standards,* 24 Hastings L.J. 647 (1973); Note, *Right to Aid in Addition to Counsel for Indigent Criminal Defendants,* 47 Minn.L.Rev. 1054 (1963).

Section 815.7 and rule 19(4) partially implement this constitutional right. Although those provisions do not apply in the present situation, the Constitution independently mandates judicial recognition of an indigent's right to necessary investigative services. *See Williams,* 207 N.W.2d at 104; *Worthy,* 109 Cal.App.3d at 520–21, 167 Cal. Rptr. at 406. The fact that a third person retained private counsel for plaintiff does not by itself affect his status as an indigent. *See Schmidt v. Uhlenhopp,* 258 Iowa 771, 140 N.W.2d 118 (1966). Plaintiff's indigency is undisputed.

Moreover, this is not a case where an accused has rendered himself impecunious by an unreasonable expenditure of funds to retain private counsel. Nor is it a case where counsel's fee should reasonably be expected to cover investigative services.

In defending the court's order in the present case, the State nevertheless contends that plaintiff's remedy is to accept court-appointed or assigned counsel, in which event section 815.7 would authorize payment for the requested investigative services at public expense. The State argues that no constitutional violation exists so long as this alternative is available. It also argues that to hold otherwise would permit an indigent to retain counsel of his own choosing, a right which he does not have.

The State's constitutional argument begs the question. If, as we have held, the sixth amendment provides authority for furnishing investigative services to indigents at public expense without regard to whether the indigent is represented by counsel at public expense, the fact that indigents represented by counsel at public expense have the same right is not material. It would be strange if the Constitution required the government to furnish both counsel and investigative services in cases where the indigent needs and requests public payment for only investigative services. The State's theory would impose an unreasonable and unnecessary additional burden on the public treasury.

Moreover, we do not share the State's concern about an indigent's right to be represented by counsel of his choice when the attorney is not paid at public expense. We have recognized that an indigent does not have this right of choice when counsel is paid from public funds. *State v. Williams,* 285 N.W.2d 248, 254 (Iowa 1979). However, no reason exists for depriving an indigent of the same right of choice as a person of means when the indigent is able to obtain private counsel without public expense.

Under the record in the present case, we hold that the court erred in denying plaintiff's application for investigative services at public expense. We sustain the writ and remand for further proceedings.

WRIT SUSTAINED.

All Justices concur except UHLENHOPP, J., who concurs specially.

UHLENHOPP, Justice (concurring specially).

We have here an indigent defendant to whom $900 was available ($800 from his mother and $100 from his own earnings) to retain an attorney. The attorney was paid

that amount and now asks public funds for investigative services on defendant's behalf—a handwriting expert and depositions.

I have no doubt that an indigent defendant is constitutionally entitled to investigative services at public expense in appropriate cases as a matter of equal protection of the laws, since an affluent defendant could obtain them with his own funds. Defendant's mother is not obligated to provide them.

The General Assembly has provided the means for defendant as an indigent to have investigative services. It has enacted section 815.7, The Code 1981:

> An attorney appointed by the court to represent any person charged with a crime in this state shall be entitled to a reasonable compensation which shall be the ordinary and customary charges for like services in the community to be decided in each case by a judge of the district court, including such sum or sums as the court may determine are necessary for investigation in the interests of justice and in the event of appeal the cost of obtaining the transcript of the trial and the printing of the trial record and necessary briefs in behalf of the defendant. Such attorney need not follow the case into another county or into the appellate court unless so directed by the court at the request of the defendant, where grounds for further litigation are not capricious or unreasonable, but if such attorney does so his or her fee shall be determined accordingly. Only one attorney fee shall be so awarded in any one case except that in class "A" felony cases, two may be authorized.

I think that if defendant desires public funds he must play according to the rules of the game provided by the General Assembly. Since section 815.7 is restricted to "attorney[s] appointed by the court" defendant will have to apply to have his present attorney so appointed. The attorney will then be entitled to reimbursement for investigative services in accordance with the section—"such sum or sums as the court may determine are necessary for investiga-

tion in the interests of justice"—provided he shows his private retainer is used up.

This is the point at which I cannot accept defendant's argument. Defendant apparently believes that what happened to the retainer the attorney received is none of the public's business. I believe it becomes the public's business when defendant asks for public funds. I further believe that the attorney must show the retainer was used up for legal services and expense under the standard in section 815.7—"the ordinary and customary charges for like services in the community."

At bottom, defendant's argument raises the issue of whether the profession of law has become a private business completely or whether it has retained some of its old public aspect. For generations the private aspect was underemphasized by legislatures. Attorneys defended indigents gratuitously in the federal courts and received a mere pittance in the Iowa courts. Today in the federal courts such attorneys are compensated by the public, and in Iowa courts they receive from the public the ordinary and customary charges in the community. I believe, however, that we should not swing from one extreme to the other and nullify altogether the traditional public aspect of the profession of law. As officers of the court, attorneys have a higher obligation than tradesmen. I would read section 815.7 in that light when applying it to the attorney who is compensated partially privately and partially publicly. When such an attorney asks for public compensation, I would require him to account for the use of his private retainer on the basis of the ordinary and customary charges in the community.

Thus if a retained attorney has provided legal services and expense, still has further services to provide, and asks to be appointed at public expense so that he can receive public payment for his further services, he should be required to show that the retainer was used for past services and expense and in conformity with the standard of section 815.7—the ordinary and customary charges for like services in the community. The

same should be true when a retained attorney is asking for expense money from the public, as here, as distinguished from public money for his own further services.

Section 815.7 does not expressly deal with the case of the attorney who is paid partially from private funds and partially from public funds, nor does it exclude such cases. I would hold that those cases come within the section, and that they are subject to the provisions of the section. The section does not expressly require, either, that the attorney partially paid from private funds must disclose that fact when he asks for public funds. But the situation would be unthinkable in which an attorney who has received $1000 privately would not disclose that fact to the court and account for it when asking for a fee from the public, whether for his own services or for expenses.

I would sustain the writ and permit defendant to apply to the district court for appointment of his retained attorney at public expense upon accounting for the retainer of $900.