968 P.2d 1165 (1998)
Dennis E. WIDDIS, Petitioner,
v.
The SECOND JUDICIAL DISTRICT COURT of the STATE of Nevada, In and For the COUNTY OF WASHOE, and the Honorable Janet J. Berry, District Judge, Respondents,
The State of Nevada, Real Party in Interest.
No. 31888.
Supreme Court of Nevada.
December 9, 1998.
*1166 Dennis E. Widdis, Reno, for Petitioner.
Richard A. Gammick, District Attorney, and Daniel Greco and Gary Hatlestad, Deputy District Attorneys, Washoe County, for Respondents.

OPINION
PER CURIAM.
On March 12, 1997, Troy Lewis (Lewis) was charged with aiding and abetting Deano Vincent Spurlock (Spurlock) in committing the first degree murder of Leopoldo Gonzalez-Cervantes. Lewis's father and grandmother retained Petitioner Dennis E. Widdis, Esq. (Widdis), to represent Lewis. Because Lewis was allegedly indigent, and his family was financially unable to pay for any defense services beyond Widdis's fee, Widdis filed a motion for defense services and transcripts at public expense. This motion was denied on July 30, 1997.
In its decision, the district court determined that NRS 7.135 provided authorization for payment of defense services only in those cases where an attorney other than the public defender represented a criminal defendant.[1] Accordingly, the district court determined that due to the absence of express statutory or decisional authorization, the payment of defense services at public expense was unwarranted because Widdis had been privately retained by Lewis' family. Widdis did not seek immediate redress from the district court's order denying his motion for defense services at public expense. On August 13, 1997, after fruitful plea negotiations, Lewis pleaded guilty to the reduced charge of attempted armed robbery with the use of a deadly weapon and agreed to testify against Spurlock. On September 5, 1997, Lewis was released on bail and began working as a carpenter making approximately twelve dollars per hour.
Following Lewis' guilty plea to the reduced charge, Widdis hired clinical psychologist Dr. Martha Mahaffey to conduct a psychological evaluation of Lewis in order to present the district court with sentencing alternatives. Pursuant to the terms of his retainer agreement with Lewis' family, Widdis was not obligated to pay for defense costs. Additionally, Lewis' family could not afford to pay Dr. Mahaffey's fee. Accordingly, in order to secure Dr. Mahaffey's services, Widdis assured Dr. Mahaffey that he would seek payment of her fees at public expense. Dr. Mahaffey completed her evaluation on October 17, 1997, and recommended that Lewis undergo a comprehensive substance abuse program and be sentenced to probation rather than to a lengthy prison sentence. Although Widdis received a copy of Dr. Mahaffey's report shortly thereafter, Widdis did not file a copy of this report or provide a copy to the State until November 24, 1997, one day prior to Lewis' initial sentencing.
On December 18, 1997, based in part on Dr. Mahaffey's evaluation, the district court sentenced Lewis to the Nevada State Prison for a 120-day evaluation with the possibility of probation thereafter. Although Dr. Mahaffey was present and prepared to testify, Widdis did not call her but instead indicated to the court that she was available if the court had any questions pertaining to Lewis' psychological evaluation. On February 25, 1998, Widdis filed the instant petition for mandamus relief to compel the district court to order the payment of Dr. Mahaffey's $2400.00 fee for professional services at public expense.

DISCUSSION
Widdis argues that irrespective of the fact that Lewis' family had retained private counsel on Lewis' behalf, Lewis was indigent and thus the State was legally obligated to pay for reasonable defense services. Accordingly, *1167 Widdis argues that the district court failed to perform a mandatory duty in refusing to direct the State to pay Dr. Mahaffey's fee.
Widdis's argument is twofold: (1) generally, an indigent criminal defendant who has retained private counsel is nonetheless entitled to necessary defense services at public expense; and (2) in the present case, this court's extraordinary relief is warranted to compel the district court to order the payment of Dr. Mahaffey's fee with public funds. While we agree with Widdis' first proposition, we conclude that our extraordinary relief in this specific case would be premature at this juncture.
A writ of mandamus is available to compel the performance of an act that the law requires as a duty resulting from an office, trust, or station, pursuant to NRS 34.160, or to control an arbitrary or capricious exercise of discretion. See Round Hill Gen. Imp. Dist. v. Newman, 97 Nev. 601, 637 P.2d 534 (1981). A writ of mandamus will not issue if the petitioner has a plain, speedy, and adequate remedy at law. See NRS 34.170; NRS 34.330. Finally, this court retains discretion in deciding whether to entertain a writ of mandamus. See State ex rel. Dep't Transp. v. Thompson, 99 Nev. 358, 662 P.2d 1338 (1983); Poulos v. Eighth Judicial District Court, 98 Nev. 453, 455, 652 P.2d 1177, 1178 (1982).
The State poses two challenges to the propriety of Widdis' petition for this court's mandamus relief. First, the State argues that Widdis' June 12, 1997, motion for defense services was defective because it did not contain a specific request for Dr. Mahaffey's professional services. Because Widdis did not hire Dr. Mahaffey until September 1997, the State argues that Widdis thus has an adequate remedy at law: that is, Widdis can request Dr. Mahaffey's fee from the district court and then appeal from the district court's order if need be. In the alternative, the State argues that Widdis' petition for a writ of mandamus is barred by the doctrine of laches because Widdis failed to file his petition until seven months after the district court's denial of his motion for defense services at public expense. We reject both of the State's arguments.
Widdis made various requests in his June 1997 motion including a general request for the services of a mental health expert/consultant. Although Widdis' request does not specifically reference Dr. Mahaffey, such lack of specificity is not fatal to Widdis' instant petition. Instead, we conclude that Widdis' general request for mental health expert fees encompassed Dr. Mahaffey's fee and, thus, Widdis need not be forced to return to the district court to specifically request fees for Dr. Mahaffey's services.
Likewise, we conclude that Widdis' petition is not barred by the doctrine of laches due to his seven-month delay in filing. Initially, we note that there is no specific time limit delineating when a petition for a writ of mandamus must be filed. See Buckholt v. Second Judicial District Court, 94 Nev. 631, 633, 584 P.2d 672, 673 (1978). Moreover, there is no evidence in the record to suggest that Widdis' February 25, 1998, filing date resulted from inexcusable delay or acquiescence, or caused undue prejudice to the State. See Id. at 633, 584 P.2d at 673 (explaining that the doctrine of laches will preclude this court's consideration of a petition for writ of mandamus based on whether "(1) there was an inexcusable delay in seeking the petition; (2) an implied waiver arose from petitioners' knowing acquiescence in existing conditions; and, (3) there were circumstances causing prejudice to respondent"). Accordingly, we conclude that Widdis' general request for the services of a mental health expert encompassed Dr. Mahaffey's fee, and that Widdis' petition was timely filed.
Turning to the merits of the instant petition, Widdis argues that even though he had been privately retained by Lewis' family, Lewis was indigent and, thus, the State was legally obligated to pay for reasonable defense services such as Dr. Mahaffey's fee. We agree that the State has a duty to provide reasonable and necessary defense services at public expense to indigent criminal defendants who have nonetheless retained private counsel. However, in the instant case, we conclude that our extraordinary relief *1168 would be premature due to a lack of specific findings with respect to Lewis' indigency status and whether Dr. Mahaffey's evaluation was reasonably necessary for Lewis' defense.
The Iowa Supreme Court faced a similar situation in English v. Missildine, 311 N.W.2d 292 (Iowa 1981). In English, a defendant's mother retained private defense counsel for her son, but could not afford to pay for expert witness fees or deposition expenses. Consequently, the defendant applied for these services at county expense; however, the trial court denied the defendant's application. Id. at 293.
On appeal, the Iowa Supreme Court issued a writ of certiorari compelling the county to pay the requested expenses. Id. at 294. The court noted that although an Iowa statute similar to NRS 7.135 authorized the public payment of defense services for court-appointed attorneys, this statute did not apply because the defendant's mother had retained private counsel. Id. at 293. Irrespective of the absence of any express statutory authorization, the court concluded that the Sixth Amendment right to effective assistance of counsel provided authority for the payment requested by the defendant. Id. at 294. According to the court, the determinative question was the defendant's indigency. Once indigency was established, the court concluded that the "`defendant [was] constitutionally entitled to those defense services for which he demonstrate[d] a need.'" Id. (quoting People v. Worthy, 109 Cal.App.3d 514, 167 Cal.Rptr. 402, 406 (1980)).
We conclude the English court's analytical framework is sound. Accordingly, we hold that a criminal defendant who has retained private counsel is nonetheless entitled to reasonable defense services at public expense based on the defendant's showing of indigency and need for the services. Although the use of public funds in this manner may appear to be a misuse of such funds, we feel that a contrary rule would have a greater negative impact on scarce public resources by creating disincentives for defendants to seek private representation at their own expense. Such representation, at least, defrays the most costly aspect of defending a person charged with criminal misconduct; costs that otherwise would be borne by public funds. Additionally, a contrary rule disallowing the use of public funds would undoubtedly create disincentives to the defense bar from taking those cases in which defense counsel would possibly have to absorb the cost of defense services. Further, we are confident that a sufficient safeguard against the misuse of public funds is created by placing the burden squarely on the defendant to demonstrate both indigency and reasonable need for the services in question.[2]
In applying this framework to the instant case, we conclude that there has been an inadequate showing as to Lewis' indigency status and whether Dr. Mahaffey's report was reasonably necessary to Lewis' defense. While Widdis' motion for defense services at public expense was supported by Lewis' affidavit of indigency, Lewis' affidavit is dated June 12, 1997, at which time Lewis was incarcerated. However, in September 1997, Lewis was released on bail and began immediate full-time employment as a carpenter making approximately twelve dollars per hour. Dr. Mahaffey conducted her evaluation during this period when Lewis was gainfully employed on a full-time basis. Moreover, although Widdis had received Dr. Mahaffey's report shortly after its October 17, 1997, completion, Widdis did not file a copy of this report or proffer a copy to the State until November 24, 1997, one day prior to Lewis' initial sentencing.
Based on the foregoing, we conclude that Widdis' motion for this court's extraordinary relief was procedurally appropriate and timely filed. However, due to a lack of specific findings with respect to Lewis' indigency status and whether Dr. Mahaffey's report was reasonably necessary, we are unable to determine whether the district court acted arbitrarily or capriciously in denying Widdis' motion for defense services at public expense.
Accordingly, we grant Widdis' petition in part. The clerk of this court shall issue a *1169 writ of mandamus directing the district court to vacate its order denying Widdis' motion for defense services and transcripts at public expense, and to grant the motion if the district court makes a determination that Lewis was indigent and that Dr. Mahaffey's evaluation was reasonably necessary for Lewis' defense.
YOUNG, J., dissenting.
The majority holds that the State has a duty to provide reasonable and necessary defense services at public expense to indigent criminal defendants despite the fact that private counsel has been retained. I agree. However, I propose that the determination of "reasonable and necessary" defense services should be determined prior to counsel expending money on such services.
Under the federal scheme, statutory procedure calls for an ex parte showing of need in camera.[1] Criminal Justice Act 18 U.S.C. § 3006A(e)(1) (1970). Persuasive authority has also proposed that "state courts should grant an in camera hearing upon request. When such a hearing is granted, the procedure is to file a motion for defense services tendering both the nature of the services sought and the reasons for seeking them in a subsequent proceeding in camera." Ephraim Margolin and Allen Wagner, The Indigent Criminal Defendant and Defense Services: A Search for Constitutional Standards, 24 Hastings L.J. 647, 662 (1973).
In this case, Widdis secured Dr. Mahaffey's services by assuring her that he would seek payment of her fees at public expense. Widdis received a copy of Dr. Mahaffey's report around October 17, 1997, and did not petition the district court for an order of payment of Dr. Mahaffey's $2400.00 fee until February 25, 1998. I conclude that before the State is obligated to pay such fees, counsel should be required to make a showing of need. I further conclude that such procedures for demonstration of need should be left to the legislative branch.
I fear that without procedural safeguards, the court's decision today will open the flood-gates to excessive expenses of expert witnesses. By requiring private counsel to get approval of defense services before actually obtaining them, the courts can reasonably limit the high cost of criminal litigation. Furthermore, attorneys can then reallocate a portion of their fees to cover the cost of some, or all, of the requested services should they be denied.
Hence, I would affirm the district court's order denying Widdis' motion for defense services at public expense, because he failed to show need prior to contracting for Dr. Mahaffey's services.
Accordingly, I dissent.
NOTES
[1] In pertinent part, NRS 7.135 provides:

The attorney appointed by a magistrate or district court to represent a defendant is entitled... to be reimbursed for expenses reasonably incurred by him in representing the defendant and may employ, subject to the prior approval of the magistrate or the district court in an ex parte application, such investigative, expert or other services as may be necessary for an adequate defense....
[2] In cases where the private funds committed to fees seem excessive, the district court has the discretion to refuse applications for public assistance.
[1] I do not mean to suggest that every case calls for an ex parte hearing. In this case, there would be no need for an ex parte hearing because the expert was used at the sentencing phase rather than during the trial.