133 Nev., Advance Opinion 113

# IN THE SUPREME COURT OF THE STATE OF NEVADA

WILLIS T. BROWN,
Petitioner,
vs.
THE EIGHTH JUDICIAL DISTRICT
COURT OF THE STATE OF NEVADA,
IN AND FOR THE COUNTY OF
CLARK; AND THE HONORABLE
WILLIAM D. KEPHART, DISTRICT
JUDGE,
Respondents,
    and
THE STATE OF NEVADA,
Real Party in Interest.

No. 72950

FILED

DEC 28 2017

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Original petition for a writ of mandamus challenging the district court's denial of a motion for expert services at public expense.

*Petition granted in part.*

Law Office of Gary A. Modafferi and Gary A. Modafferi, Las Vegas,
for Petitioner.

Adam Paul Laxalt, Attorney General, Carson City; Steven B. Wolfson, District Attorney, and Charles Thoman, Deputy District Attorney, Clark County,
for Real Party in Interest.

BEFORE HARDESTY, PARRAGUIRRE and STIGLICH, JJ.

*OPINION*

By the Court, STIGLICH, J.:

In *Widdis v. Second Judicial District Court*, 114 Nev. 1224, 968 P.2d 1165 (1998), this court held that, notwithstanding the ability to retain counsel, a defendant is entitled to reasonable and necessary defense services at public expense if the defendant demonstrates both indigency and a need for the requested services. We take this opportunity to clarify the definition of an indigent person as well as the demonstration of need sufficient for a request for defense services. Additionally, we make clear that *Widdis* does not require an indigent defendant to request a sum certain before a motion for defense services at public expense can be considered or granted. Based on the district court's application of *Widdis*, we grant the petition in part.[1]

## FACTS AND PROCEDURAL HISTORY

Petitioner Willis Brown faces multiple counts of lewdness with a child. Before the preliminary hearing, Brown moved for expert services at public expense pursuant to *Widdis v. Second Judicial District Court*, 114 Nev. 1224, 968 P.2d 1165 (1998), submitting an application containing financial information along with his motion. The justice court found Brown indigent and granted the motion, but limited the funds for the services to a stated amount.

After Brown was bound over to the district court, he again moved for expert services at public expense, submitting an updated

---

[1]We previously granted the petition in part in an unpublished order. Cause appearing, we grant the motion to reissue that decision as an opinion, NRAP 36(f), and issue this opinion in place of our prior unpublished order.

 

application that showed he had gained employment and reduced his monthly liabilities since his previous motion. The motion acknowledged that Brown's extended family had paid for his legal fees but asked the district court to declare him indigent and permit him to retain an investigator and expert (Dr. Mark Chambers) at State expense to assist his defense. Brown claimed he needed to retain Dr. Chambers "to fully understand and convey to both the court and/or the jury the influences upon a child's accusation in a sexual prosecution" and averred that Dr. Chambers would "testify to psychological issues involving child testimony, parental influence on that testimony, and children's motivation regarding false allegations." Additionally, Brown claimed an investigator was necessary to serve subpoenas on and obtain statements from witnesses and to generally investigate the circumstances of the allegations.

At the hearing on the motion, the district court stated its belief that Brown was not indigent:

> I don't reach that based on—I mean he's employed. He—it appears that he has to probably adjust his expenses. But for the State to be paying for his investigator fees under these circumstances, I don't think *Widdis* truly could—is saying that that's a mandatory requirement. And so I'm just making a finding based on his affidavit that he's not indigent in order to fit that.

The district court opined that the previous indigency determination might have been appropriate based on the initial application but concluded that Brown no longer qualified as an indigent based on the updated information.

After this court ordered an answer to Brown's petition, the district court held another hearing in which it expounded upon its reasons for denying Brown's motion. The district court referenced the two requirements in *Widdis*, indigency and necessity of the services, and

Supreme Court
OF
Nevada

(O) 1947A

3

gleaned a third requirement from the *Widdis* dissent, a request for a sum certain. The district court referenced Brown's exhaustion of family resources to retain counsel and deduced from that fact that Brown had resources. Additionally, the district court noted that Brown's debt-to-income ratio had appreciably decreased between his submissions of the two applications. The district court went on to say that Brown "failed to show how an investigator needed for assisting his counsel . . . wouldn't have been included within his legal fees, or if it was even discussed when securing counsel." The district court concluded that its findings were that Brown was not indigent and had not met a showing of need, specifically stating it "was a cursory attempt to show need." Counsel argued that, while Brown was currently employed, there was a significant decrease in income between Brown's previous job and current job, which was a minimum-wage-plus-tips position. The district court replied:

> But it's not a question of indigency then. Just because he's paying less. And the thing is too I made the statement in the previous argument is that he may need to adjust his expenses. At the time that I received an application his debts were way lower than the initial debt. And—but he hadn't changed his so to speak lifestyle. He was still living in a pretty expensive place where he could change that. You know, it doesn't—because he's living at, you know, X amount a month doesn't mean he needs to continue living that way because obviously his incomes went down.

The district court denied Brown's motion for expert services at public expense. Brown now seeks a writ of mandamus directing the district court to grant his motion.

Supreme Court
OF
Nevada

(O) 1947A

4

## DISCUSSION

The decision to consider a writ of mandamus[2] is within this court's complete discretion, and generally such a writ will not issue if the petitioner has a plain, speedy, and adequate remedy at law. NRS 34.170; *Cote H. v. Eighth Judicial Dist. Court*, 124 Nev. 36, 39, 175 P.3d 906, 908 (2008). Despite the availability of a remedy at law by way of an appeal should Brown be convicted, *see* NRS 177.045, we elect to exercise our discretion and consider the petition for a writ of mandamus in the interest of judicial economy and in order to control a manifest abuse or capricious exercise of discretion. *See State v. Eighth Judicial Dist. Court (Armstrong)*, 127 Nev. 927, 931-32, 267 P.3d 777, 779-80 (2011). "A manifest abuse of discretion is [a] clearly erroneous interpretation of the law or a clearly erroneous application of a law or rule." *Id.* at 932, 267 P.3d at 780 (quoting *Steward v. McDonald*, 958 S.W.2d 297, 300 (Ark. 1997)). A "capricious exercise of discretion" involves a decision that is "'contrary to the evidence or established rules of law.'" *Id.* at 932-33, 267 P.3d at 780 (quoting *Capricious, Black's Law Dictionary* (9th ed. 2009)).

---

[2]While the petition is titled a petition for a writ of certiorari, mandamus, and/or, in the alternative, writ of prohibition, it discusses only mandamus. *See Maresca v. State*, 103 Nev. 669, 673, 748 P.2d 3, 6 (1987) ("It is appellant's responsibility to present relevant authority and cogent argument; issues not so presented need not be addressed by this court."). Prohibition is unavailable because Brown does not argue that the district court was without jurisdiction to hear and determine his motion, *see* NRS 34.320; *Goicoechea v. Fourth Judicial Dist. Court*, 96 Nev. 287, 289, 607 P.2d 1140, 1141 (1980) (holding that a writ of prohibition "will not issue if the court sought to be restrained had jurisdiction to hear and determine the matter under consideration"), and certiorari is unavailable because Brown does not argue that the district court exceeded its jurisdiction or ruled on the constitutionality or validity of a statute, *see* NRS 34.020(2), (3).

*Widdis* holds "that the State has a duty to provide reasonable and necessary defense services at public expense to indigent criminal defendants who have nonetheless retained private counsel," and the case requires that a defendant make a "showing of indigency and need for the services." 114 Nev. at 1228-29, 968 P.2d at 1167-68. In so holding, the *Widdis* court adopted the analytical framework of an out-of-state case that held "[i]rrespective of the absence of any express statutory authorization . . . the Sixth Amendment right to effective assistance of counsel provided authority for the payment requested by the defendant." *Id.* at 1228, 968 P.2d at 1168. Therefore, this court held that the right to receive funds for defense services at public expense was entwined with the right to effective assistance of counsel. *Id.* Numerous other courts have come to a similar conclusion that an indigent criminal defendant may receive defense services at public expense even if the defendant does not have appointed counsel. *E.g., Dubos v. State*, 662 So. 2d 1189, 1192 (Ala. 1995) ("The simple fact that the defendant's family, with no legal duty to do so, retained counsel for the defendant, does not bar the defendant from obtaining funds for expert assistance when the defendant shows that the expert assistance is necessary."); *Jacobson v. Anderson*, 57 P.3d 733, 734-35 (Ariz. Ct. App. 2002) (concluding a defendant whose parents had retained counsel on her behalf was entitled to the opportunity to demonstrate need for requested defense services at the government's expense based on her status as an indigent); *Tran v. Superior Court*, 112 Cal. Rptr. 2d 506, 509-10, 512 (Ct. App. 2001) (considering a defendant whose counsel was retained via family funding and ordering the defendant's application for ancillary services funds be granted based on his indigency); *Arnold v. Higa*, 600 P.2d 1383, 1385 (Haw. 1979) (interpreting statutory language as not limiting

Supreme Court
of
Nevada

(O) 1947A

6

"the court's authority to approve funds for investigatory services for a defendant with private counsel"); *English v. Missildine*, 311 N.W.2d 292, 293-94 (Iowa 1981) ("For indigents the right to effective counsel includes the right to public payment for reasonably necessary investigative services. The Constitution does not limit this right to defendants represented by appointed or assigned counsel." (internal citations omitted)); *State v. Jones*, 707 So. 2d 975, 977-78 (La. 1998) ("[T]he defendant here, having private counsel provided from a collateral source, may still be entitled to State funding for auxiliary services."); *State v. Huchting*, 927 S.W.2d 411, 419 (Mo. Ct. App. 1996) (deciding that a defendant's retention of private counsel did not preclude the defendant from seeking state assistance for hiring an expert witness); *State v. Boyd*, 418 S.E.2d 471, 475-76 (N.C. 1992) ("That defendant had sufficient resources to hire counsel does not in itself foreclose defendant's access to state funds for other necessary expenses of representation—including expert witnesses—if, in fact, defendant does not have sufficient funds to defray these expenses when the need for them arises."); *State v. Wool*, 648 A.2d 655, 660 (Vt. 1994) (holding that a defendant who qualifies as a needy person has a right to necessary services at public expense that cannot be conditioned on the defendant being represented by an appointed attorney); *State ex rel. Rojas v. Wilkes*, 455 S.E.2d 575, 578 (W. Va. 1995) ("We conclude that financial assistance provided by a third party which enables an indigent criminal defendant to have the benefit of private counsel is not relevant to the defendant's right to have expert assistance provided at public expense.").

*Widdis* provides that a defendant must make a showing of indigency, but it does not define or set forth a test for determining indigency. However, this court has stated that the standard for determining indigency

for the appointment of counsel is whether a person "is unable, without substantial hardship to himself or his dependents, to obtain competent, qualified legal counsel on his or her own." In the Matter of the Review of Issues Concerning Representation of Indigent Defendants in Criminal and Juvenile Delinquency Cases, ADKT No. 411 (Order, January 4, 2008). That standard further provides that those defendants who do not fall within a presumptive threshold of substantial hardship "will be subjected to a more rigorous screening process to determine if their particular circumstances, including seriousness of charges being faced, monthly expenses, and local private counsel rates, would result in a substantial hardship." *Id.* Based on *Widdis*'s logic that the right to defense services at public expense is connected to the right to effective assistance of counsel, we conclude the standard for determining indigency for the appointment of counsel in ADKT No. 411 should also be used when determining indigency for purposes of *Widdis*.

With regard to the first prong of *Widdis*, a demonstration of indigency, the district court concluded that Brown was not indigent because his financial situation had improved since being found indigent in the justice court—he had reduced his monthly debts, he had procured a job, and he was able to retain the services of counsel through financial assistance from family. The district court's logic, however, works to disincentivize a defendant's efforts to better his or her financial situation by reducing liability and obtaining income, and it contradicts the logic we employed in *Widdis*. 114 Nev. at 1229, 968 P.2d at 1168 ("Although the use of public funds in this manner may appear to be a misuse of such funds, we feel that a contrary rule would have a greater negative impact on scarce public resources by creating disincentives for defendants to seek private

representation at their own expense."). Additionally, we have held that a determination of indigency does not require a demonstration that the person "is entirely destitute and without funds." *Rodriguez v. Eighth Judicial Dist. Court*, 120 Nev. 798, 805-06, 102 P.3d 41, 46 (2004); *see also Lander Cty. v. Bd. of Trs. of Elko Gen. Hosp.*, 81 Nev. 354, 360-61, 403 P.2d 659, 662 (1965) (recognizing that "a person does not have to be completely destitute and helpless to be considered a destitute or indigent person, but can have some income or own some property"). Further, despite Brown's financial improvement, he represented he had minimal assets that were insufficient to satisfy his basic necessities and a negatively disproportionate debt-to-income ratio, all while facing serious charges with possible sentences of life imprisonment. Given Brown's circumstances, we conclude the district court capriciously exercised its discretion by finding that Brown was not indigent, or put another way, was able to afford an investigator and/or an expert without substantial hardship.

As for the second prong of *Widdis*, a demonstration of need, the district court concluded that Brown made a cursory showing at best. Given Brown's proffer regarding the necessity of Dr. Chambers—to testify regarding psychological issues involving child testimony, parental influence on that testimony, children's motivations regarding false allegations, and the influences upon a child's accusations in a sexual prosecution—in a trial involving allegations of lewdness with a child, we conclude Brown demonstrated such an expert was reasonably necessary. In the same vein, Brown alleged he required the services of an investigator to serve subpoenas on and obtain statements from witnesses and to investigate the circumstances of the allegations. While less specific than Brown's proffer regarding the need for Dr. Chambers, we conclude that Brown

SUPREME COURT
OF
NEVADA

(O) 1947A

9

demonstrated both an investigator and Dr. Chambers were reasonably necessary to his defense and that the district court manifestly abused its discretion by concluding otherwise.

Lastly, the district court implied a third prong could be gleaned from the dissent in *Widdis*, requiring a sum certain be requested before a motion for expert services is granted. To the extent a dissent may be read to impose an additional requirement on a test adopted by the majority, we disagree with the notion that the failure to request a sum certain is fatal to a motion for expert services. Thus, the district court's reliance on Brown's failure to request a sum certain was an inappropriate reason to deny the motion. Rather, if the district court was concerned with the cost of the services, it could have inquired into the expected cost for the services, limited the amount granted to a sum certain with leave to ask for additional funds if necessary, and/or taken any other measures it deemed prudent in reasonably limiting the expenditure.

As we have concluded that the district court capriciously exercised and manifestly abused its discretion when it denied Brown's motion for expert services at public expense, we therefore grant the petition in part.[3] We direct the clerk of this court to issue a writ of mandamus

---

[3]Brown also challenges the denial of his pretrial petition for a writ of habeas corpus in which he challenged the probable cause determination at the preliminary hearing. This court generally does not exercise its discretion to entertain a pretrial challenge to a probable cause determination, *see Kussman v. Eighth Judicial Dist. Court*, 96 Nev. 544, 546, 612 P.2d 679, 680 (1980), and Brown does not demonstrate his challenge fits within the exception this court has made for a purely legal issue, *see Ostman v. Eighth Judicial Dist. Court*, 107 Nev. 563, 565, 816 P.2d 458, 459-60 (1991); *State v. Babayan*, 106 Nev. 155, 174-76, 787 P.2d 805, 819-

instructing the district court to vacate its order denying Brown's motion for expert services at public expense and to reconsider the motion consistent with this opinion.[4]

_____, J.
Stiglich

We concur:

_____, J.
Hardesty

_____, J.
Parraguirre

_____

20 (1990). To the extent Brown's claim may be construed as one that his charges should have been severed, he did not make this argument before the justice court, and the authority he relies upon does not address proceedings at a preliminary examination. Accordingly, we deny the petition in part as it relates to this claim.

[4]The clerk of this court issued the writ on October 24, 2017, pursuant to our earlier unpublished order.