IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>               Respondent,<br><br>        v.<br><br>JEREMIAH GRAHAM,<br><br>               Appellant. | No. 83921-7-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

DÍAZ, J. — A jury convicted Jeremiah Graham of violating a no contact order against his girlfriend, J.R.[1]  Graham now claims that the trial court should have awarded him a new trial, as he then requested, because the State committed misconduct during its closing argument.  Assuming misconduct occurred, but finding no prejudice, we affirm the trial court's judgment and sentence and remand only to enter an order waiving Graham's victim penalty assessment.

## I.      BACKGROUND

J.R. obtained a no contact order against Graham.  Sometime later, in 2019, someone saw them arguing outside a fast food restaurant in Marysville, and called 911.  A police officer responded to the 911 call and saw the two of them arguing.

---

[1] J.R. is referred to by her initials to protect her privacy.

The officer arrested Graham. According to the officer, upon his arrest, Graham said he knew he violated the no contact order, and claimed he only wanted to say goodbye to J.R.

Before trial, counsel for Graham moved in limine to exclude, among other things, the contents of the 911 call and the reason the officer was dispatched. The State agreed and the court ordered that the officer would testify only "that he was dispatched to a potential dispute."

At trial, only two witnesses testified. The officer testified for the State. On behalf of the defense, a friend of Graham testified that J.R. had initiated the contact, and Graham was attempting to walk away. In its closing argument, as will be discussed in more detail below, the State, admittedly, violated the trial court's order in limine regarding the admissibility of a 911 call regarding the incident. Graham's trial counsel objected to this argument—referred to herein as "the State's 911 argument"—and the trial court promptly gave a curative instruction.

The jury found Graham guilty of violating the no contact order. Graham then moved for a new trial, claiming that the State's 911 argument constituted prosecutorial misconduct, for reasons we discuss below. The trial court granted the motion.

The State moved for reconsideration of the order for new trial. During oral argument on the State's motion, it admitted that it had committed, and apologized for its, misconduct in making its 911 argument, but averred that any misconduct was not prejudicial. The trial court granted the State's motion for reconsideration. Graham was subsequently sentenced and now timely appeals.

After Graham filed his appeal, he filed a motion to strike the victim penalty assessment from his judgment as well.

## II. ANALYSIS

A. Was denial of a new trial improper?

1. Law

Under CrR 7.5(a), a defendant may move for a new trial. Under CrR 7.5(a)(2), a defendant may seek a new trial because of prosecutorial misconduct under certain conditions, namely:[2]

> (a) Grounds for New Trial. The court on motion of a defendant may grant a new trial for any one of the following causes when it affirmatively appears that a substantial right of the defendant was materially affected: . . .
>
> (2) Misconduct of the prosecution or jury.

CrR 7.5(a)(2).

The substantial right at issue here is the right to a fair trial, which is a fundamental liberty secured by the Sixth and Fourteenth Amendments to the United States Constitution and article I, section 22 of the Washington State Constitution. In re Glasmann, 175 Wn.2d 696, 703, 286 P.3d 673 (2012). Prosecutorial misconduct may deprive a defendant of their constitutional right to a fair trial. Id. at 703-704.

---

[2] Under CrR 7.5(a)(6), a defendant also may move for a new trial if an error of law occurs at the trial that the defendant objected to at the time, which we review de novo. State v. Sanchez, 14 Wn. App. 2d 261, 266, 471 P.3d 910 (2020). However, on appeal, Graham does not argue that the trial court committed an error of law. He argues the trial court abused its discretion by misconstruing the *facts,* stating: "[t]he court's decision to deny Graham's new trial motion was an abuse of discretion because it was based on untenable grounds."

"The defendant bears the burden of showing that the [State's] comments were improper and prejudicial." State v. Lindsay, 180 Wn.2d 423, 430, 326 P.3d 125 (2014). Our inquiry of prosecutorial misconduct "consists of two prongs: (1) whether the prosecutor's comments were improper; and (2) if so, whether the improper comments caused prejudice." Id. at 431. To show prejudice, "the petitioners must show a substantial likelihood that the prosecutor's statements affected the jury's verdict." Id. at 440.

"'Except where questions of law are involved, a trial judge is invested with broad discretion in granting motions for new trial.'" State v. Sanchez, 14 Wn. App. 2d 261, 266, 471 P.3d 910 (2020) (quoting State v. Williams, 96 Wn.2d 215, 221, 634 P.2d 868 (1981)). We review the factual determinations underlying allegations of prosecutorial misconduct for an abuse of discretion. Lindsay, 180 Wn.2d at 430.

2. Discussion

On appeal, Graham argues that the State committed misconduct in making its 911 argument, both because it encouraged the jury to speculate about facts not in the record and because the 911 argument violated the court's order on the motion in limine.

a. Preserved error

As a preliminary matter, the State argues that Graham did not adequately preserve his claim of prosecutorial misconduct for appeal. Specifically, the State avers that Graham failed to preserve the error below because (a) he did not object to the State's 911 argument as a violation of the motion in limine (but only because it encouraged the jury to speculate), and (b) because he did not request a curative

instruction. For that reason, the State continues, Graham waived the objection unless he shows the State's misconduct was both flagrant and ill-intentioned, such that the resulting prejudice could not be cured by the missing instruction.

Indeed, at trial, Graham objected to the State's 911 argument as asking the jury to speculate "as to things that are not in evidence." And on appeal, Graham does not address the State's challenge to the preservation of error because it first appeared in the State's response brief, and Graham did not file a reply. Nonetheless, we find the State's challenge unpersuasive.

Generally, a party may preserve an error for appeal if, among other things, "the record has been sufficiently developed to fairly consider the ground." RAP 2.5(a). Moreover, "[i]n a case where the nature of the appeal is clear and the relevant issues are argued in the body of the brief and citations are supplied so that the Court is not greatly inconvenienced and the respondent is not prejudiced, there is no compelling reason for the appellate court not to exercise its discretion to consider the merits of the case or issue." State v. Olson, 126 Wn.2d 315, 323, 893 P.2d 629 (1995). This issue meets these standards.

Three unique aspects of this case counsel us to exercise our discretion to consider the merits of Graham's argument. First, the parties litigated the issue of whether misconduct occurred twice below. In his motion for new trial, Graham argued the State committed prosecutorial misconduct because the State exceeded the agreed upon scope of the motion in limine. Then, the State briefed the same issue in its motion for reconsideration. Both parties referred to the full record and cited caselaw in their briefing. In neither set of briefing did the State claim that

Graham waived the claim of error by not stating this specific basis of his objection. As such, the general "nature of the appeal is clear," the "relevant issues" are relatively developed, and there appears no "compelling reason" for the court to fail to exercise its discretion to reach the merits of Graham's argument. Olson, 126 Wn.2d at 323.

Second, to the extent that the specific objection was not fully litigated below, this omission may be in part because the State quickly conceded, on the record, that it committed misconduct in making its 911 argument:

> Your honor must find that the improper remark that I made in rebuttal – and I also want to . . . point out I am not disputing that it was improper. I conceded that . . . [i]t wasn't until after I reflected upon it . . . that I realized yes, it did go beyond the limited purpose for which it was admitted . . . [a]nd so I want to apologize to your [sic] and defense.

Moreover, the State conceded in its written motion for reconsideration the precise basis of the misconduct was the violation of the motion in limine:

> The State does not dispute the Court's previous finding that the challenged remark was misconduct *because the remark did go beyond the limited purpose agreed to in motions in limine*.

(emphasis added). This concession effectively shut down further consideration about the legal basis of why the State committed misconduct.

Instead, the State pivoted and focused its opposition to the motion for a new trial on whether such misconduct prejudiced the result against Graham, stating: "even if it was improper, the State's position is that it is not prejudicial." Thus, given these concessions, the trial court had no further reason to consider the precise basis of the State's misconduct.

Third, in its briefing on appeal, the State does not contest the merits of whether its 911 argument violated the motion in limine. The State only argues that its prosecutor did not encourage the jurors to engage in speculation and that it did not commit prosecutorial misconduct on that basis. We will accept that effective concession.

In short, Graham objected to the State's 911 argument sufficiently below, and this issue is sufficiently preserved for appeal. Thus, under RAP 2.5(a), we choose to exercise our discretion to consider it.

In turn, as the State conceded below (and by its silence on appeal) that misconduct occurred, we will assume, without finding, that misconduct occurred for purposes of the remaining analysis. Thus, we now examine whether that misconduct prejudiced the result.

b. Prejudice

i. Additional factual background

In its closing argument, the State stated:

> This 911 caller felt the need to call 911 for a potential dispute. Would it be enough to cause someone to call 911 if they see a woman with her arms out, as Mr. Scharpp said, just saying, "Jeremiah, stop," over and over, after two men walking away? Or is it more likely and reasonable that this 911 caller called it in because it was a man following a woman aggressively.

Graham's trial counsel objected: "Your Honor, I don't think this is permissible. I think that's calling for improper speculation." The trial court responded by instructing the jury as follows:

> The jury knows the facts that were testified to. I'll remind you that argument is not evidence, and you can draw whatever reasonable

7

inferences from that evidence.  That the jury will determine what the evidence was at trial.

In later granting the State's motion for reconsideration (and denying the motion for a new trial), the court found the State's closing argument "created substantial prejudice that would affect the jury's verdict in the context of everything . . . fundamental to the jury's finding of guilt.  And I have to conclude no."

### ii.  Discussion[3]

Graham argues the misconduct was prejudicial "because it insinuated the existence of facts the state had no evidence to support and invited the jury to convict based on those insinuated facts."  In other words, according to Graham, the State's 911 argument was prejudicial, not just because it was a technical violation of the motion in limine, but because it corroborated the officer's version of events at the scene.  Graham claims he suffered the same type of prejudice here as the defendant in State v. Fisher, 165 Wn.2d 727, 747, 202 P.3d 937 (2009).

In Fisher, the trial court considered whether to admit evidence of Fisher physically abusing his biological son and stepchildren, "in the form of Fisher spanking, hitting, slapping, and kicking" them.  Id. at 734.  The trial court "expressly conditioned" the admission of that evidence "only" to explain the victim's delay in

---

[3] The parties do not argue, and thus we do not address, the possibly gendered nature of the State's 911 argument, either that men are viewed as more dangerous than women, or that women need protection.  See Dalton M., LLC v. N. Cascade Tr. Servs., 2 Wn.3d 36, 40, 534 P.3d 339 (2023) ("an appellate court may not raise a new issue sua sponte if it is separate and distinct from the questions presented and unnecessary to resolve those questions—especially when the new 'issue' is more like a whole new unpleaded claim depending on factual allegations that were never presented in or proved to the trial court").

reporting the charged sexual abuse, which delay the court expected would "come up in the trial and be a major issue" for the defense. Id. at 734 & 746-47. "Despite the pretrial ruling, comments and testimony regarding Fisher's alleged physical abuse came up throughout the proceedings"—including in the State's opening statement, its examination of several witnesses, and in its closing argument—even though the defense did not raise the issue of delayed reporting. Id. at 734-735 & 747-48.

With this evidence, the State "generate[d] a theme throughout the trial that Fisher's sexual abuse" of one child "was consistent with his physical abuse of all his stepchildren and biological children," which our Supreme Court found to be "an impermissible use of the evidence," as it violated ER 404(b) and constituted misconduct. Id. at 748-49. Moreover, the Court held that there was a substantial likelihood that the prosecuting attorney's misconduct affected the jury because the jury was "left with the wrong impression that it must convict Fisher to obtain justice for the harm caused to [the other children], in addition to [the alleged victim of the sexual abuse]." Id. at 749.

The circumstances of this appeal are quite different.

First, unlike Fisher, the State did not make its 911 argument in its opening statement, nor did it explore it while examining any witness. Rather, the State made one passing comment in its closing argument. Our courts have held that similar inappropriate but passing comments in closing arguments may not constitute misconduct. See, e.g., State v. Irby, 3 Wn. App. 2d 247, 265, 415 P.3d

611 (2018) (two brief "challenged sentences" that evidence is not disputed is not prosecutorial misconduct).

Second, here, unlike in Fisher, Graham objected and the court issued a limiting instruction. The limiting instruction reminded the jury not to consider the argument as evidence. We presume that the jury follows the trial court's instructions. State v. Emery, 174 Wn.2d 741, 754, 278 P.3d 653 (2012). Thus, we presume this instruction sufficiently limited how the jury would consider the State's 911 argument, i.e., not as new substantive corroborating evidence, but as the State's view of the previously admitted fact that a 911 call occurred.

Finally, the State's inference from the 911 call was not the only evidence to inform the jury's verdict generally or even the only evidence about the state of affairs at the scene. The jury heard testimony from two eyewitnesses, the police officer and Graham's friend. The officer testified that he saw Graham and J.R. standing face to face arguing. The officer testified Graham answered his questions and stated he knew he *violated* the no contact order, but wanted to "say good-bye," which admission was unrebutted. Graham did not contest these facts on cross-examination.

For his part, Graham's friend testified Graham tried to avoid J.R. because he knew he was not supposed to talk to her, but the friend otherwise left the scene when the officer arrived, which left the officers testimony as the only evidence in the record about the officer's observations.

In short, the State's passing 911 argument did not create a substantial likelihood that the prosecuting attorney's misconduct affected the jury, which was

instructed to not consider the 911 argument as evidence and which heard overwhelming evidence of his guilt. Thus, the trial court did not err in declining to grant a new trial on these facts.

B.      Victim Penalty Assessment

In 2023, our legislature passed Engrossed Substitute House Bill (ESHB) 1169. LAWS OF 2023, ch. 449. ESHB 1169 prohibits courts from imposing the Victim Penalty Assessment (VPA) upon indigent defendants. LAWS OF 2023, ch. 449, § 1; RCW 7.68.035(4); State v. Ellis, 27 Wn. App. 2d 1, 16, 530 P.3d 1048 (2023). The statute further requires trial courts to waive any VPA imposed prior to the effective date if the offender is indigent. Id. The amendment took effect July 1, 2023. Id.

After the law was enacted, this court decided Ellis. In that case, it concluded that the amendment applied to Ellis because the case was on direct appeal. Id. (citing State v. Ramirez, 191 Wn.2d 732, 748-49, 426 P.3d 714 (2018)). Because there was not a finding on the record that Ellis was indigent, the court remanded the case to "reconsider the imposition of the VPA based on that determination." Id.

The trial court here sentenced Graham on April 12, 2022 before RCW 7.68.035(4) was effective. However, his appeal was pending review on RCW 7.68.035(4)'s effective date. Graham filed a motion to strike the VPA from his verdict on June 23, 2023. The Commissioner ruled that this motion should be considered by the court on the merits due to the question of law.

11

The trial court deemed Graham indigent at the time of trial, and his counsel declared that he remained indigent due to his incarceration at the time of his appeal. The trial court granted his motion to appeal in pauperis.

In response, while it objects to certain aspects of Graham's motion to strike, the State concedes that, because Graham is incarcerated at the time of appeal, he is most likely still indigent. Further, the State does not object to allowing a post-conviction motion to waive the previously imposed VPA. Therefore, accepting the State's concession, we remand this matter only for the trial court to waive the VPA.

## III.    CONCLUSION

We affirm the trial court's judgment and sentence but remand this matter to the trial court to waive the imposition of the VPA.

Díaz, J.

WE CONCUR:

Feldman, J.                          Mann, J.